**STATE**

v.

**William SHINN.**

**No. 2000–211–C.A.**

Supreme Court of Rhode Island.

Jan. 7, 2002.

---

Annie Goldberg, Aaron L. Weisman, Providence, for plaintiff.

Joshua Macktaz, John J. Bevilacqua, Edward J. Romano, Providence, for defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This case came before the Court pursuant to the appeal of the defendant William Shinn (defendant), who was convicted of simple assault and battery and conspiracy. The defendant contends that the trial justice erred in denying his motion for mistrial based on evidence mistakenly submitted to the jury. The evidence in question contained handwritten notes summarizing a photo identification conducted by two detectives with David Crane (Crane), a potential witness who was not presented at trial. We agree, and conclude that the trial justice should have declared a mistrial. Because of the dispositive nature of this holding, we need not address the defendant's argument that the trial justice erred in denying his motion for new trial. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

The defendant, a former correctional officer at the Adult Correctional Institutions (ACI), was accused of beating an inmate, Jesse Souza (Souza), along with codefendant Kenneth Saritelli (Saritelli).[1] Souza, a minimum security inmate at the time, escaped from work detail on February 21, 1996. He asserted that after he was captured and returned to prison, two officers beat him as they transferred him to the segregation unit. Chief Inspector Aaron Aldrich (Aldrich) of the Internal Affairs Office of the Department of Corrections received a phone call about the alleged beating and conducted an investigation. Souza initially denied that he had been beaten, attributing the injuries to a fall from his bed.

---

1. On February 19, 2001, the Superior Court entered a judgment of conviction and commitment, modifying Saritelli's original sentence. Saritelli then withdrew his appeal.

Aldrich did not believe Souza's original story and deduced that the injuries might have been staff-related. It was not until a second interview that Souza admitted he was beaten, and at a third interview, Souza disclosed that Saritelli had struck him in the face. Souza also testified that there was a second attacker, someone who had struck him with keys, but he could not identify the person. Later, defendant was linked to the beating because he apologized to Souza for striking him in the face with a set of keys and, as a gesture of remorse, gave Souza two packs of cigarettes. Aldrich also concluded that defendant and Saritelli were involved because they were the only two officers on duty in the unit where the alleged beating had taken place.

Eventually, Saritelli and defendant were arrested. The defendant was charged with one count of assault with a dangerous weapon and one count of conspiracy. A Superior Court jury trial commenced. During the trial, the prosecution offered three documents as full exhibits. The three documents were photo identification logs (photo packs). Each photo pack contained six photographs[2] and a statement from a witness, Crane, who had been shown the photo pack. After more than four hours of jury deliberation, the jury posed a question to the court concerning the three exhibits.

Specifically, the jury inquired about the handwritten notes on each of the photo packs. The notes were recorded by detectives while Crane examined the photo packs. Crane did not appear at the trial as a witness. Each statement, dated February 6, 1998, contained information about the beating and possible cover-up of the events. Specifically, one of Crane's statements indicated that defendant discussed Saritelli's assault of Souza with another correctional officer. Crane also said he heard defendant and the other correctional officer talk about a possible cover-up of the assault. The statements were not discovered until the jury questioned the identity of Crane.

After the jury raised the question, the trial justice summoned both counsel and the jury into the courtroom to discuss the query. The trial justice informed the jury that the identity of Crane was not important and that his statements were hearsay and to be disregarded in their deliberation. The trial justice then asked the jurors whether they would be able to disregard the statements and still reach a verdict. After almost two hours of consideration, the jury returned an affirmative answer. The next day, the trial justice denied defendant's motion for mistrial.

The jury found defendant not guilty of the count of assault with a dangerous weapon, but found defendant guilty of the lesser included offense of simple assault and battery and one count of conspiracy. The defendant moved for a new trial and the trial justice denied the motion. The trial justice sentenced defendant to one year of probation for the simple assault, and three years' suspended sentence with three years' probation for conspiracy. The defendant timely appealed.

## II

### Denial of Motion for Mistrial

The defendant argues that Crane's statements contained in the photo packs were extremely prejudicial in nature and violated defendant's right to a fair trial.

---

**2.** Typically, one photograph is that of the suspect, the other five photographs are of people with similar characteristics of the suspect.

As such, defendant argues that the trial justice erred in not granting a mistrial. We agree. .

■■■■ "A trial justice's ruling on a motion for a mistrial is entitled to great weight and will not be disturbed on appeal unless the trial justice is clearly wrong." *State v. Luciano*, 739 A.2d 222, 228 (R.I. 1999). "The trial justice 'has a front-row seat at the trial' and is in the best position to determine whether a defendant has been unfairly prejudiced." *Id.* (quoting *State v. Gomes*, 690 A.2d 310, 317–18 (R.I. 1997)). "In considering a motion for a mistrial, the trial justice must determine whether the evidence would cause the jurors to be so inflamed as to make them unable to decide the case on the basis of the evidence presented." *Id.* (citing *State v. Mastracchio*, 672 A.2d 438, 444 (R.I. 1996)). Furthermore, "[i]f the prejudice can be cured *** a mistrial will be ordered only if we are convinced that the cautionary instructions were untimely or ineffective." *State v. Kholi*, 672 A.2d 429, 433 (R.I.1996) (citing *State v. Hoyle*, 122 R.I. 45, 47–48, 404 A.2d 69, 70 (1979) and *State v. Marrapese*, 116 R.I. 1, 7, 351 A.2d 95, 98 (1976)).

■■■■ First, we note that while the record reflects that the admission of the statements was not deliberate by either party, both share the responsibility for the erroneous admission. During the course of the trial, both parties had the opportunity to examine the materials before they were submitted to the jury, and, in error, both counsel allowed the evidence to be presented to the jury. The defendant did not object when the photo packs were offered into evidence as a full exhibit. At the end of the trial, the trial justice twice asked both parties to verify the exhibit record and both agreed they had examined the exhibits.

Although we appreciate the extraordinary dilemma this situation presented to the court, the trial justice was clearly wrong in denying the motion for mistrial. While the declaration of a mistrial is the nightmare of any trial justice, especially at this stage of the proceedings, the trial justice had no choice under the circumstances of this case. Even though the trial justice had a long discussion with the jury about the evidence and valiantly attempted to cure any prejudice, the case was unsalvageable.

The trial justice explained that Crane's statements were "wholly hearsay" and that the remarks as contained in that exhibit were "irrelevant, immaterial and ought not to have qualified as evidence before you." He asked the jurors several times whether they could reach a verdict without considering the mistakenly admitted evidence. Specifically, the trial justice directed the foreperson to "get everybody's input and tell me whether or not—in writing—the jury can disregard Mr. Crane's statements, and, in disregarding the statements, *can they reach a verdict?*" (Emphasis added.) The trial justice eventually received the answer that "the jurors [felt] confident that [they could] process the information before [them] without regard to the inadmissible evidence that [they had]."

However, the trial justice failed to ask the jurors whether they could reach a "fair" verdict. On each occasion, the trial justice referred only to the jury's ability to reach *a* verdict. Instead, the trial justice should have inquired into the jury's ability to disregard the prejudicial evidence and return a verdict that was fair to the defendant and the state. Furthermore, the fact that the jurors took two hours to return with an answer is evidence of their struggle with, and probable influence of, the illegal evidence. Notwithstanding, the proper course of action in the instant case was to declare a mistrial because of the

prejudicial nature of the mistakenly admitted evidence. *See State v. Miller*, 679 A.2d 867, 871–72 (R.I.1996). The possibility exists that the jury impermissibly based its finding of any wrongdoing by the defendant, in part, or solely, on the Crane statements.

Accordingly, the defendant's appeal is sustained and the judgment of the Superior Court is vacated. The case is remanded to the Superior Court for a new trial.