STATE

v.

Danilo DISLA.

No. 2003–74–C.A.

Supreme Court of Rhode Island.

May 26, 2005.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

SUTTELL, Justice.

This matter came before the Supreme Court on the appeal of the defendant, Danilo Disla,[1] from a judgment of conviction entered in the Superior Court. A jury found the defendant guilty of one count of delivering a controlled substance, to wit, heroin, as well as one count of conspiring to violate the Rhode Island Controlled Substances Act, G.L. 1956 chapter 28 of title 21, by agreeing to deliver a controlled substance. A trial justice of the Superior Court sentenced the defendant to fifteen years on each count, with three years to serve and twelve years suspended, with twelve years of probation, both sentences to run concurrently. A judgment of conviction was entered on January 29, 2002, from which the defendant appealed.[2]

The defendant contends on appeal that the evidence presented by the prosecution at trial was legally insufficient to support the conspiracy conviction, and thus the trial justice erred by denying his motion for judgment of acquittal. On this point, the state agrees and concedes that it presented insufficient evidence at trial to support the charge of conspiracy beyond a reasonable doubt. In addition, defendant asserts that the trial justice erred in refusing to pass the case on two occasions during the trial; once after Det. Fred E. Rocha, a witness for the state, testified that the alleged coconspirator was a known narcotics user; and again, after the same witness testified that two days before the alleged drug transaction, he had taken a photograph of Disla crossing the intersection that Det. Rocha had under surveillance and where the alleged transaction took place. For the reasons stated below, we reverse the judgment of the Superior Court on the conspiracy count and affirm the judgment on the delivery count.

## Facts and Procedural History

The incident that gave rise to defendant's conviction occurred on March 22, 1996. On that day, defendant was arrested and charged with conspiring to violate the Rhode Island Controlled Substances Act in violation of § 21–28–4.08. The defendant later was charged by criminal information, on June 6, 1996, with delivering a controlled substance in violation of § 21–28–4.01(A)(2)(a)[3] and with conspiring to violate the Rhode Island Controlled Substances Act in violation of § 21–28–4.08. The defendant's trial commenced on July 11, 2000. The state's primary witness was Det. Rocha, a Providence Police detective, with five or six years experience as a narcotics investigator. He testified that in March 1996, he was conducting surveillance of suspected drug activity in the area

1. The criminal information incorrectly identified the defendant as "Danilo Raimundo alias John Doe." At trial, the defendant testified that Raimundo is his middle name and that his correct name is Danilo Disla.

2. The judgment of conviction was signed on January 29, 2002; the defendant, however, filed his notice of appeal on January 28, 2002. An appeal filed before entry of a final judgment may be treated as timely in the interests of justice and to avoid undue hardship. *State v. Ibrahim,* 862 A.2d 787, 793 (R.I.2004) (citing *Russell v. Kalian,* 414 A.2d 462, 464 (R.I. 1980)).

3. Currently codified as G.L.1956 § 21–28–4.01(a)(4)(i).

of Broad and Warrington Streets in Providence. On the morning of March 22, 1996, he was positioned inside a building on Broad Street, overlooking the intersection of Broad and Warrington Streets at a distance of approximately forty feet. The detective testified that at approximately 10:15 a.m., he observed defendant standing at the corner and talking with several people. After a short conversation, defendant went into a convenience store at the corner, left shortly thereafter, and then turned down Warrington Street, where he disappeared from Det. Rocha's view. The detective testified that at about the same time he observed and recognized Bryan Kenner, the alleged coconspirator, whom he described in court as "a narcotic user." The defendant's counsel immediately objected and requested to be heard.

At sidebar, defendant's counsel moved to pass the case, saying defendant would be prejudiced because the jury would use this statement to find him guilty by association. The trial justice then excused the jury and conducted a voir dire of Det. Rocha to establish the foundation and probative value of his knowledge of Kenner as a drug user. When the trial resumed the next morning, the trial justice sustained counsel's objection and struck the answer. She declined, however, to grant a mistrial, saying that Det. Rocha's comment could be cured by a cautionary instruction because it was said "about the third party Kenner who is going to be connected to drugs." Arguing that it was too late to "unring this bell," defendant's counsel took exception to "whatever cautionary instruction" the court might give.

After the trial justice gave a cautionary instruction to the jury, Det. Rocha continued his testimony and said that with the help of binoculars he saw defendant and Kenner "engage in an exchange of hands which is consistent with narcotic activity."

He elaborated that he observed Kenner walk up to defendant and engage in a short conversation followed by "an exchange of two hands." This exchange involved Kenner handing defendant an undetermined amount of currency with one hand and receiving items from defendant with the other hand. Detective Rocha described it as "a very quick exchange," lasting only ten to fifteen seconds.

Detective Rocha testified that he next observed Kenner get into a green Volvo that had just pulled up to the side of the street where the suspected drug transaction had taken place. As soon as Kenner got in the car, the detective saw him hand the items he had just received from defendant to the driver of the vehicle. He made it clear that what Kenner handed to the driver of the Volvo was "the package he received from the defendant," in exchange for money. The Volvo then drove off with Kenner, and Det. Rocha lost sight of it. He then radioed Patrolman William McCusker, who was stationed nearby in a marked police cruiser.

On redirect examination, the prosecution referred Det. Rocha to a photograph marked State's exhibit 1 for identification. When asked how he recognized that picture, Det. Rocha responded "[i]t's a picture that I took when I was doing surveillance, a picture of the defendant when I was doing surveillance." After this comment, defendant's counsel sought to be heard at sidebar. Subsequently, the trial justice ordered another voir dire examination of Det. Rocha outside the presence of the jury to establish a foundation. The defendant's counsel then, again, moved for a mistrial, saying the witness's reference to the picture prejudiced his client. The trial justice, however, denied the motion and gave another cautionary instruction to the jury.

When Officer McCusker took the stand during the state's case, he testified that he was asked over the radio by Det. Rocha on the morning of March 22, 1996, to stop a Volvo traveling on Elma Street, just off Broad Street. He stopped the vehicle on Elma Street near Prairie Avenue and ordered the driver and passenger out of the car. Officer McCusker then searched the driver and recovered several small packets of heroin from his pocket, which he then turned over to a detective.[4] During his testimony Officer McCusker identified packets of drugs shown to him as those seized from the driver of the Volvo. The officer identified the passenger as Bryan Kenner. Detective Rocha, who also had been shown the packets of heroin during his testimony, noted that they had the same appearance as the items he observed during the transaction involving defendant and Kenner, but was unable to say whether they were indeed the same items.

At the close of the state's case, defendant's counsel made a motion for judgment of acquittal on both counts. On count 1, delivery of a controlled substance, he argued that even in the light most favorable to the state there was insufficient evidence to prove delivery because the drugs seized from the driver of the Volvo could not be established to be the same as those defendant allegedly gave to Kenner. Concerning count 2, conspiracy, defendant's counsel argued that in the light most favorable to the state there was no evidence presented that an agreement existed between defendant and Kenner, and that defendant had no knowledge of "what Mr. Kenner was going to do with [the drugs]." The trial justice denied the motion for judgment of acquittal on both counts, but expressed her concern that at no point during the trial was there an in-court identification of defendant as the person involved in the reported drug transaction. With regard to the conspiracy count, the trial justice said that

"conspiracies are very difficult to prove but for circumstantial evidence and although there is no direct evidence that the defendant knew that Kenner was not going to use the drugs for personal use but was going to turn around and sell them to someone else and did not enter into an agreement with Kenner for that subsequent transaction, I think that the jury could, in fact, draw a reasonable inference that there was a conspiracy considering that the crime of conspiracy often is proven by circumstantial evidence."

The defendant then testified on his own behalf through an interpreter and gave a very different account of the events on March 22, 1996. He testified that around 10 in the morning on that day he was in the Popular Market convenience store at the corner of Broad and Warrington Streets, reading a Dominican newspaper. At some point he went next door to Petro's Restaurant to buy some food, which he took back to the store. He went on to say that while he was sitting near the cash register eating and reading the newspaper, a dark-skinned man ran into the store and into the back, followed by a uniformed police officer. He said that the police officer had his gun drawn and arrested the man. The defendant then testified that the police officer asked him whether he had seen that man throw anything on the floor. Ten or fifteen minutes later, defendant said, a dark-skinned police officer came into the store and searched him by pulling down his pants and searching him in the area of his groin and anus while other customers were watching. A detective then allegedly told defendant that he

---

4. The parties stipulated that the substance recovered in ten small packets was heroin.

would let him go if he "told him who was distributing drugs." Disla further testified that he told the detective that he did not know anything about drugs and that he was then taken to jail by the uniformed police officer.

After both parties rested, the trial justice continued the case until the next morning for closing arguments. Mr. Disla, however, did not appear in court the next day, and a bench warrant was issued. The proceedings continued, and later that day the jury returned guilty verdicts on both the delivery and conspiracy counts. It appears from the record that defendant did not resurface until he was arrested on September 7, 2001. His motion for a new trial was denied on September 28, 2001, and on January 24, 2002, he was sentenced to concurrent terms of fifteen years on each count, with three years to serve at the Adult Correctional Institutions and twelve years suspended with twelve years of probation.

## Discussion

### A. Sufficiency of the Evidence

■ The defendant's first argument on appeal is that the state did not present legally sufficient evidence to support the charge of conspiracy and that, therefore, the trial justice erred in refusing to grant defendant's motion for judgment of acquittal on this count. Before addressing the merits of this contention, we must consider the threshold question of whether the issue is properly preserved for appellate review.

■ It is well established that the "denial of a motion for judgment of acquittal made at the close of the state's case is preserved for appeal only if the defense has rested its case * * * or renews the motion at the conclusion of the presentation of all the evidence." *State v. Andreozzi,* 798 A.2d 372, 374 (R.I.2002) (quoting *State v. Studley,* 671 A.2d 1230, 1231 (R.I. 1996)).

In the case before us, defendant moved for a judgment of acquittal, under Rule 29 of the Superior Court Rules of Criminal Procedure, at the conclusion of the state's evidence. The trial justice heard arguments from counsel, recessed, then thoughtfully reviewed the evidence and denied the motion. The defendant did not rest, however; rather he testified on his own behalf, after which the state recalled Det. Rocha as a rebuttal witness. After both sides rested, the following colloquy took place between the trial justice and defense counsel:

"[DEFENSE COUNSEL]: I have another motion under the rule but that can be done quickly.

"THE COURT: Same grounds?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: Same ruling.

"[DEFENSE COUNSEL]: Thank you.

"THE COURT: Exception noted. That was pretty quick."

In the context of this case, we are satisfied that counsel was indeed referring to a motion under Rule 29, and that the issue, therefore, was adequately preserved for our review. Clearly, the trial justice understood the nature of the motion. However, while acknowledging that "brevity is the soul of wit"[5] and subscribing to the proposition that "less is more,"[6] we also can envision a scenario in which the nature of an objection might not be so readily

---

5. William Shakespeare, The Tragedy of Hamlet, Prince of Denmark act 2, sc. 2.

6. Robert Browning, Andrea del Sarto (called the "Faultless Painter") 2 The Poems & Plays of Robert Browning, 352, 353 (J.M. Dent & Sons Ltd. ed.1932).

apparent from such legal shorthand. In light of our "raise or waive" rule, the issue might therefore be lost.[7]

This Court has held that "[i]n reviewing a claim of legal sufficiency of the evidence in the context of a motion for a judgment of acquittal, this Court applies the same standard as that applied by the trial court, namely, '[we] must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw therefrom all reasonable inferences consistent with guilt.'" *State v. Rodriguez,* 798 A.2d 435, 437 (R.I.2002) (quoting *State v. Otero,* 788 A.2d 469, 475 (R.I.2002)).

### B. State's Confession of Error

The state does not contest defendant's assertion, and indeed concedes that his motion for judgment of acquittal should have been granted. We have held, however, in *State v. Smith,* 797 A.2d 1073 (R.I. 2002) (mem.), that

> "[i]n future cases wherein the state moves to sustain a defendant's appeal and to vacate a judgment of conviction, the state's motion shall be accompanied by a confession of error specifically denoting the error asserted as a basis for reversal. Further, in any such case, this Court reserves the right to assign the motion to the argument calendar for the Court's independent consideration of the asserted error, because the state's concession that a conviction should be vacated 'does not automatically govern an appellate court's disposition of an appeal.'" *Id.* at 1073 (quoting *United States v. Vasquez,* 85 F.3d 59, 60 (2d Cir.1996) and cases cited therein).

We note that here, the state first confessed error in its pre-briefing statement and reiterated the confession in its full brief. In *Young v. United States,* 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832 (1942), the United States Supreme Court ruled with respect to the government's confessions of error that

> "[t]he public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. * * * Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." *Id.* at 258–59, 62 S.Ct. 510.

Furthermore, in *Sibron v. New York,* 392 U.S. 40, 58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court expressed that "[i]t is the uniform practice of this Court to conduct its own examination of the record in all cases where the * * * [state] confesses that a conviction has been erroneously obtained." We conclude, therefore, that despite the state's confession of error, we are obligated to conduct a thorough, independent review of the evidence.

■■■ "Conspiracy is an agreement by 'two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose.'" *State v. Lassiter,* 836 A.2d 1096, 1104 (R.I.2003) (quoting *State v. Mastracchio,* 612 A.2d 698, 706 (R.I.1992)).

---

**7.** We caution counsel therefore to specify clearly for the record the nature of their objections or motions to preserve their clients' rights on appeal. *See State v. Andreozzi,* 798 A.2d 372, 374 (R.I.2002); *see also* Rule 103(a) of the Rhode Island Rules of Evidence.

"Once an agreement has been made, no further action in furtherance of the conspiracy is necessary to find a defendant guilty of the crime of conspiracy." *Id.* (citing *State v. Romano,* 456 A.2d 746, 757 (R.I.1983)). "The state must prove the existence and scope of the conspiracy charged beyond a reasonable doubt. * * * We previously have recognized that there seldom will be direct evidence of an explicit agreement to commit an unlawful act, and that the existence and scope of a conspiracy often must be 'inferentially established by proof of the relations, conduct, circumstances, and actions of the parties.' " *Id.* (quoting *Mastracchio,* 612 A.2d at 706); *see also State v. Ahmadjian,* 438 A.2d 1070, 1084–85 (R.I.1981). In *Ahmadjian,* evidence supported the defendant's conviction on drug and extortion charges. We held, however, that

> "the record is devoid of any evidence that establishes, either directly or inferentially, that [defendant] had knowledge of any weapons transactions. None of the conversations about weapons testified to * * * occurred in [defendant's] presence. Although we have concluded that a conspiracy to sell drugs *in large amounts* raises an inference of conspiracy to coerce the collection of debts arising from such sales, we cannot say that the involvement in drug sales raises an inference of agreement to traffic in weapons also. One agreement does not encompass the other. To prove the existence of a conspiracy, the evidence and the reasonable inferences derived therefrom must show that the conspirator knew the scope of the agreement. In the absence of such proof, the conspiracy charge may not stand." *Ahmadjian,* 438 A.2d at 1085 (citing *State v. Giorgi,* 115 R.I. 1, 4–5, 339 A.2d 268, 270–71 (1975); *State v. Gilman,* 110 R.I. 207, 212–13, 291 A.2d 425, 429 (1972)). (Emphasis added.)

■ Similarly, in the present case, there is insufficient evidence to support the contention that defendant entered into an agreement with Kenner that the latter would resell the drugs defendant had just sold to him. There was no evidence of any previous contacts between defendant and Kenner suggesting a conspiracy, nor was there sufficient evidence from which the jury could reasonably infer that the quantity of drugs involved was more than Kenner required for his personal use. Because the evidence presented was capable of supporting reasonable inferences that were inconsistent with guilt, the state failed to meet its burden of proving the conspiracy count beyond a reasonable doubt.

■ We have recognized that "the existence and scope of a conspiracy often must be 'inferentially established by proof of the relations, conduct, circumstances, and actions of·the parties.' " *Lassiter,* 836 A.2d at 1104 (quoting *Mastracchio,* 612 A.2d at 706). Circumstantial evidence, indeed, "may be sufficient to support a conviction." *Rodriguez,* 798 A.2d at 437 (citing *State v. Jackson,* 570 A.2d 1115, 1117–18 (R.I. 1990)). This is true only, however, "as long as the totality of the circumstantial evidence presented to the finder of fact constitutes proof of guilt beyond a reasonable doubt." *Id.* (quoting *Otero,* 788 A.2d at 473). In the present case, we find that the state failed to establish that defendant entered into any agreement that went beyond a singular sale of a quantity of drugs small enough to fit into a person's hand.

Even "in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw[ing] therefrom all reasonable inferences consistent with guilt," *id.* (quoting *Otero,* 788 A.2d at 475), the evidence in this case does not support a charge that defendant entered into a

conspiracy with Kenner to sell drugs. Consequently, the trial justice committed error in denying defendant's motion for judgment of acquittal on the conspiracy count.

### C. Motion to Pass/Motion for Mistrial

■ "A motion to pass a case is viewed for all intents and purposes as identical to a motion for a mistrial." *State v. LaRoche*, 683 A.2d 989, 999 (R.I.1996) (citing *State v. Toole*, 640 A.2d 965, 974 (R.I.1994)). "A trial justice's decision to deny a motion for a mistrial is accorded great weight and will not be disturbed on appeal unless it is clearly wrong." *State v. Higham*, 865 A.2d 1040, 1044–45 (R.I.2004) (quoting *State v. Lynch*, 854 A.2d 1022, 1033 (R.I.2004)). "[T]he trial justice enjoys a ringside seat at the trial and therefore is in the best posture to determine whether a witness's inappropriate remark [or action] has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence." *Id.* (quoting *State v. Werner*, 830 A.2d 1107, 1113 (R.I. 2003)).

■ Furthermore, "[i]f the prejudice can be cured[,] * * * a mistrial will be ordered only if we are convinced that the cautionary instructions were untimely or ineffective." *State v. Shinn*, 786 A.2d 1069, 1072 (R.I.2002) (quoting *State v. Kholi*, 672 A.2d 429, 433 (R.I.1996)). "Certainly, the entire rationale underlying the structure of jury trials and the lyrical deference that is paid to jury findings rests upon the proposition that jurors will obey the admonitions of the trial justice and will apply the law as given to them by the justice presiding." *State v. Fenner*, 503 A.2d 518, 522 (R.I.1986). "In the absence of any indication that the jury was not capable of complying with the trial justices cautionary instruction, this court must as-

sume that the jury did disregard the witness comments as it was instructed to do." *State v. Powers*, 566 A.2d 1298, 1304 (R.I. 1989) (citing *Fenner*, 503 A.2d at 522).

■ In the first instance, defendant's counsel moved to pass the case after Det. Rocha, a witness for the prosecution, identified Kenner, to whom defendant allegedly sold drugs, as "a narcotic user." The trial justice denied the motion and remarked that "to say that about the defendant would be so prejudicial that it would be a bell that could not be unrung. To say it about the third party Kenner who apparently is going to be connected to drugs, subsequent testimony is not as much of a concern to the extent that it cannot be cured with a cautionary instruction. I am going to give a cautionary instruction." The trial justice then told the jury:

"When last you were here and heard testimony there was an objection asserted to an answer given by the witness. The witness was referring to Bryan Kenner and the witness said something to the [e]ffect that Kenner was a drug user. The objection was raised. The objection was sustained. I instructed you to disregard that statement.

"Now, * * * let me tell you further that gratuitous statement was beyond the scope of the question, number one. Number two, was without any evidentiary basis in this case. It is a statement that you must disregard because there was no evidence provided linking Mr. Kenner to being a drug user. But more importantly, * * * there was no evidence in this case and there is no evidence that would link Mr. Kenner's alleged drug use to the defendant or to what the defendant knew or didn't know about Mr. Kenner.

" * * * It's so prejudicial that that statement was made that I have to ask you and I'm going to ask each and every

one of you if you are able to disregard it, sit on this case, and hear the evidence from this point on without any regard to that prejudicial inappropriate statement and I'm going to take you one at a time and ask if you can do that."

The trial justice then proceeded to poll the jurors individually, and all agreed that they would be able to disregard the statement. We are satisfied that the trial justice's comprehensive instruction to the jury was more than adequate to cure any possible prejudice that may have resulted from the witness's comment about a third party. Consequently, we hold that the trial justice did not err in refusing to pass the case at this point.

■■■ The second motion for a mistrial occurred after the following exchange between the same witness and the prosecutor with regard to a photograph admitted into evidence for purposes of identification:

"[THE PROSECUTOR]: Officer, showing you State's—I believe that's State's 1 for identification, do you recognize that picture?

"[THE WITNESS]: Yes.

"[THE PROSECUTOR]: And how do you recognize that picture?

" ✻ ✻ ✻

"[THE COURT]: And, sir, would you make sure to respond just to the question.

"[THE WITNESS]: You want me to answer that question? It's a picture that I took when I was doing surveillance, a picture of the defendant when I was doing surveillance."

The defendant's attorney asserted that the witness's answer exceeded the scope of testimony permitted by the trial justice, and that this prejudiced the defendant. The trial justice again agreed to give a cautionary instruction:

"Ladies and gentlemen, the witness had been asked a question having to do with how he knew what this photograph depicted. In his answer[,] beyond testifying that he took the photograph[,] he went on to say that it depicted the defendant. He did that after I cautioned him to just answer the question. Now, I am at a point where I have to tell you a little bit about the photograph so you are not prejudiced by what you heard. Number one, this photograph was not taken on the date of the alleged transaction. Number two, the defendant, if the person depicted in the picture is the defendant, because I do not know that, if the person depicted in the photograph is the defendant, he is not depicted at the location described by the officer when he testified as to the location of the alleged transaction.

"So I'm striking the answer and I'm instructing you to disregard it and I'm specifically telling you those are the reasons why. This photograph is not relevant to this case and is has no probative value. The only reason I allowed any testimony about photographs was because the witness had testified that he had a camera and took photographs[,] but this photograph does not depict the location in question or the date in question."

The trial justice then, again, obtained individual assurances from all jurors that they would be able to disregard the picture. She told the jurors that the photograph was taken on a different date from the alleged transaction and that the person depicted in the photograph was shown in a different location from the alleged transaction. As in the first instance, we have no indication that the jury was unable or unwilling to heed the trial justice's advice and to follow her instruction. Again, we find no error in the trial justice's determination that a cautionary instruction was sufficient

in this case to fend off any prejudice against the defendant, nor in her denial of the motion for mistrial.

## Conclusion

For the aforementioned reasons, the judgment of the Superior Court is affirmed with respect to count 1 of delivery of a controlled substance. The Superior Court judgment with respect to count 2, conspiracy to violate the Rhode Island Controlled Substances Act by agreeing to deliver a controlled substance, to wit, heroin, is vacated. The record in this case shall be remanded to the Superior Court.