STATE

v.

Antonio MENDOZA.

No. 2000–409–C.A.

Supreme Court of Rhode Island.

Nov. 30, 2005.

Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendant, Antonio Mendoza (defendant), appeals from a Superior Court judgment of conviction on four separate counts: (1) delivery of a controlled substance; (2) conspiracy to violate the Rhode Island Controlled Substances Act; (3) possession of marijuana; and (4) resisting arrest. The defendant was sentenced to ten years imprisonment for each of the delivery and conspiracy counts, with two years to serve and eight years suspended. The defendant received one year to serve for both the possession and resisting arrest counts. All sentences are to run concurrently.

This case came before the Supreme Court for oral argument on September 26, 2005, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments and examining the record and the memoranda that the parties filed, we are of the opinion that cause has not been shown, and shall proceed to decide the case at this time. For the reasons set forth in this opinion, we affirm the judgment.

## I

### Facts and Travel

At about 9:30 p.m. on March 18, 1998, undercover Detectives Angelo A'Vant (Det. A'vant) and Fabio Zuena (Det. Zuena) of the Providence Police Department were patrolling the area of Public and Broad Streets in Providence in response to numerous complaints of drug activity. While creeping along in an unmarked vehicle, the detectives were approached by Robert Clement (Clement), who asked if the officers were looking for "rock," or crack cocaine. The detectives responded in the

affirmative, and Clement told the pair to follow him to Daboll Street, approximately one block from their present location.

When the detectives arrived at Daboll Street a short time later, Clement again approached the vehicle and beckoned Det. A'Vant to follow him. Detective A'Vant complied, and Det. Zuena remained in the vehicle. Clement led Det. A'Vant a few houses over to 55 Daboll Street, and into an unattached garage toward the rear of the property. Here, Det. A'Vant handed Clement a marked $20 bill, presumably as prepayment for the crack cocaine. Clement then rang a doorbell inside the garage, and a few moments later defendant and a second man emerged from the rear of the Daboll Street dwelling.

The defendant immediately began berating Clement for bringing a stranger to the property. Clement attempted to assuage the defendant's ire by handing him the $20 bill, which defendant snatched from Clement's hand. The defendant and Clement then entered the dwelling through the rear door.

Detective A'Vant testified that no more than a minute later defendant and Clement reemerged from the same door. The defendant apparently still was expressing his dissatisfaction with Clement's decision to bring a stranger by the house when Det. A'Vant saw defendant hand Clement a clear bag. The substance in the bag later tested positive for crack cocaine. Clement and Det. A'Vant then walked together back to the unmarked vehicle a few houses away. After the two got into the car,

Clement handed the clear bag to Det. A'Vant and the two detectives identified themselves as police officers, placing Clement under arrest.

A short time later, Detectives A'Vant and Zuena returned to 55 Daboll Street with at least two other officers from their unit to arrest defendant. They entered the backyard and identified themselves as police officers. Detectives A'Vant and Zuena then approached the rear entrance of the dwelling, again identifying themselves as police officers, and they observed defendant in the kitchen. Once defendant saw the pair, he turned and fled toward the front of the house. Detective Zuena tackled defendant to the floor and, with Det. A'Vant's assistance, the detectives placed defendant under arrest after a brief struggle. A subsequent search of defendant did not produce the money.

At the police station, the detectives searched defendant and uncovered three bags of marijuana on his person.

■ The defendant was charged by criminal information with delivery of a controlled substance in violation of G.L.1956 § 21–28–4.01(A)(2)(a), conspiracy to violate the Rhode Island Controlled Substances Act in violation of § 21–28–4.08, possession of marijuana in violation of § 21–28–4.01(C)(1)(b),[1] and resisting arrest in violation of G.L.1956 § 12–7–10. After a jury trial on February 18, 2000, defendant was found guilty on all four counts.[2] The defendant filed a timely notice of appeal.[3]

1. The 2002 Reenactment of G.L.1956 § 21–28–4.01 re-designated the subdivision and paragraphs in subsection (a) through (c).

2. The defendant subsequently made a motion for new trial, which was denied, and he appealed to this Court. While that appeal was pending, defendant filed a second motion for new trial based upon newly discovered evidence and a motion for reduction of bail.

This Court remanded the case on May 30, 2001.

3. The judgment of conviction was signed on May 22, 2000, but defendant filed a notice of appeal on May 11, 2000. "An appeal filed before entry of a final judgment may be treated as timely in the interests of justice and to avoid undue hardship." *State v. Disla*, 874

## II

## Analysis

The defendant makes four arguments on appeal: first, that the trial justice erred in denying his motion to pass the case; second, that the trial justice erred in denying his motion for judgment of acquittal; third, that the trial justice erred by giving a flight instruction to the jury; and fourth, that the trial justice erred by allowing the state to impeach Clement with his guilty plea. The specifics of each contention and relevant facts follow.

## A

### Denial of Motion to Pass the Case

The defendant argues that the trial justice erred in denying his motion to pass the case for two reasons. First, he contends that the state, in purported contravention of the Superior Court Rules of Criminal Procedure, failed to notify or furnish the defense, pursuant to a discovery request, with a copy of a statement defendant made to Det. A'Vant at the time of his arrest. Second, defendant claims that the state's question attempting to elicit this same statement at trial was, by itself, so prejudicial and inflammatory to the jury that its effects were beyond cure.

The facts relevant to both defendant's nondisclosure and incurable prejudice arguments are as follows. Detective A'Vant testified on direct examination that at some point after finally succeeding to secure defendant on the night of his arrest, he asked defendant where the marked $20 bill was. The defendant made no response to the detective. On September 8, 1999, defendant had filed a discovery motion that tracked, verbatim, Rule 16(a)(1) of the Superior Court Rules of Criminal Procedure: "[A]ll relevant written or recorded statements or confessions, signed or unsigned, or written summaries of oral statements or confessions made by the defendant, or copies thereof[.]" The defendant's response to Det. A'Vant was not included in the materials remitted by the state pursuant to that discovery request because, as noted by the trial justice, the contents of defendant's statement "[were] never transcribed by pencil, pen, or electronic means."

During direct examination of Det. A'Vant, the state elicited that he had asked defendant the whereabouts of the marked $20 bill. The state followed with the obvious query—"And did he respond to you?"—and defendant objected. The trial justice excused the jury and allowed a limited voir dire of the witness to ascertain his anticipated testimony. The defendant immediately moved to have the trial justice pass the case, citing both a nondisclosure violation and incurable prejudice from the state's unanswered query. At voir dire, Det. A'Vant testified about defendant's alleged response to his post-arrest question, and also stated that he first told the prosecution of the undisclosed reply during his direct examination. After sustaining defendant's objection and striking the state's question, the trial justice cautioned the jurors and confirmed their ability to comply with his admonition.[4]

A.2d 190, 192 n. 2 (R.I.2005) (citing *State v. Ibrahim*, 862 A.2d 787, 793 (R.I.2004)).

4. The trial justice's cautionary instruction, in pertinent part, was as follows:

"THE COURT: There was an objection. That objection is sustained. And I'm going to go further than merely 'sustaining the objection' because I feel it is appropriate and necessary for me to do so.

"Ladies and gentlemen, that was an improper question, all right? I object—I sustained the objection to the question because of an issue of law. I strike the question because of an issue of law. And I instruct you, that you are not to speculate about

At the outset we note that "[a] motion to pass a case is viewed for all intents and purposes as identical to a motion for a mistrial." *State v. Disla,* 874 A.2d 190, 198 (R.I.2005) (quoting *State v. La-Roche,* 683 A.2d 989, 999 (R.I.1996)). "[I]t is well-settled law that motions to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Oliveira,* 774 A.2d 893, 912 (R.I. 2001) (quoting *State v. Figueroa,* 673 A.2d 1084, 1091 (R.I.1996)). "The reason we vouchsafe such broad power in the trial justice in this regard is 'that he or she possesses a "front-row seat" at the trial and can best determine the effect of the improvident remarks upon the jury.'" *Id.* Thus, "[a] trial justice's ruling on a motion for a mistrial is entitled to great weight and will not be disturbed on appeal unless the trial justice is clearly wrong." *State v. Shinn,* 786 A.2d 1069, 1072 (R.I.2002) (quoting *State v. Luciano,* 739 A.2d 222, 228 (R.I.1999)).

The defendant first contends that the state's failure to notify or disclose defendant's response to Det. A'Vant's crime scene inquiry was grounds for mistrial. Of course, a nondisclosure allegation requires that there be something to disclose in the first place. Answering the trial justice's initial question at voir dire, Det. A'Vant testified that defendant made no response to him on the night in question.[5] In addition, Det. A'Vant testified that the first time he informed the prosecution of the subject inquiry was while he was on the witness stand. While the prosecution's attempt to elicit defendant's response at trial may have been regrettable, we cannot hold that the state has a duty to disclose a nonexistent statement.

The defendant next contends that the state's question attempting to elicit defendant's response at trial was so prejudicial and inflammatory as to warrant a declaration of mistrial. He argues that by merely posing the question, even with no response, the state potentially invited the jury to speculate that defendant, in fact, gave an incriminating reply on the night of his arrest. According to defendant, once rung, the bell cannot be unrung, and the trial justice's cautionary instruction served only to resurrect and highlight the state's objectionable question.

In reference to potentially prejudicial evidence at trial, we have held that "[i]f the prejudice can be cured[,] * * * a mistrial will be ordered only if we are convinced that the cautionary instructions

---

what the answer might have been had the question been answered and my objection overruled. You're not to speculate one way or the other. My ruling is based on the question, itself. Okay? You are not to speculate as to what Detective A'Vant's response might have been if he were permitted to respond to that question, nor may you consider whether the question, itself, merited a response, didn't happen.

"Now, I'm going to ask you, ladies and gentlemen, I want you to be candid with me. Can you, in fact, do that? Can you disregard the question and not speculate as to what the answer might have been if I permitted it?

"(JURORS NODDED HEADS).

"THE COURT: Am I correct, I take it by your silence, your answer is 'yes'? Everybody is nodding in the affirmative.

"(JURORS NODDED HEADS).

"THE COURT: Very well. Is there anyone here who could not do that? Fine.

"I'm satisfied that you can all follow my instruction in that regard, and now I am going to go to side bar with counsel for just a moment and we'll be back. Chat."

5. The fact that defendant may have tried to alert Det. A'Vant of his inability to speak or comprehend English is of no moment in this appeal. The trial testimony plainly reveals that whatever may have escaped defendant's mouth during his arrest was far from meaningful in any conceivable way.

were untimely or ineffective." *Disla*, 874 A.2d at 198 (quoting *Shinn*, 786 A.2d at 1072). "Certainly, the entire rationale underlying the structure of jury trials and the lyrical deference that is paid to jury findings rests upon the proposition that jurors will obey the admonitions of the trial justice and will apply the law as given to them by the justice presiding." *Id.* (quoting *State v. Fenner*, 503 A.2d 518, 522 (R.I.1986)). Without any indication that a jury was unable to comply with the trial justice's cautionary instruction, "this court must assume that the jury did disregard the witness comments as it was instructed to do." *Id.* (quoting *State v. Powers*, 566 A.2d 1298, 1304 (R.I.1989)).

We are convinced that the trial justice's admonition to the jurors and subsequent efforts to ensure their compliance were more than sufficient to cure whatever minimal prejudice there might have been to defendant. The trial justice immediately stopped questioning after defendant's objection and conducted an intensive voir dire and motion hearing without the jury present. When the jury returned, the trial justice forbade them from "speculat[ing] as to what Detective A'Vant's response might have been if he were permitted to respond to that question." In addition, she ensured that each member was capable of refraining from any such speculation. Without any evidence to the contrary, we decline to sustain defendant's appeal on this issue.

## B

### Denial of Motion for Acquittal

The defendant next argues that the trial justice erred in denying his motion for acquittal on both the conspiracy and resisting arrest counts. First, defendant argues that "Wharton's Rule" precludes application of the crime of conspiracy to the behavior charged in his criminal information.

Second, defendant maintains that during his arrest he did not know he was resisting police officers, but instead would-be burglars.

"When reviewing the denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice." *State v. Werner*, 851 A.2d 1093, 1110 (R.I.2004) (quoting *State v. Brown*, 798 A.2d 942, 950 (R.I.2002)). "In ruling on this motion, the trial justice 'must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and must draw therefrom all reasonable inferences consistent with guilt.' " *Id.* "Viewing the evidence in this light, if the evidence could sustain a guilty verdict by the jury, the trial justice should deny the motion." *Id.* (quoting *State v. Clifton*, 777 A.2d 1272, 1276–77 (R.I.2001)).

Before we discuss the merits of defendant's conspiracy contention, we must discern whether he has properly preserved this issue for appellate review. The "denial of a motion for judgment of acquittal made at the close of the state's case is preserved for appeal only if the defense has rested its case * * * or renews the motion at the conclusion of the presentation of all the evidence." *Disla*, 874 A.2d at 195 (quoting *State v. Andreozzi*, 798 A.2d 372, 374 (R.I.2002)). The state argues that since defendant never advanced his argument at trial under the proper title—Wharton's Rule—he failed to preserve the issue. Although we recognize that defendant never uttered the formal designation of his assertion, we are satisfied that the essence of his legal impossibility claim at trial was sufficiently analogous to the proper iteration of the rule to preserve the issue for appellate review.

Returning to the substantive charge, defendant urges that Wharton's Rule precludes his conspiracy conviction, although he points us to no binding precedent to support such a contention. Section 21–28–4.08 makes it a criminal violation to conspire "to violate any provision" of the Rhode Island Uniform Controlled Substances Act. *See generally* chapter 28 of title 21. Rhode Island subscribes to the common law formulation of conspiracy, requiring "a combination of two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose." *State v. Reis,* 815 A.2d 57, 63 (R.I. 2003) (quoting *State v. Mastracchio,* 612 A.2d 698, 706 (R.I.1992)).

Wharton's Rule is a logical limitation to the prosecution of conspiracy. It provides that "[a]n agreement between two persons to commit an offense does not constitute conspiracy when the target offense is so defined that it can be committed only by the participation of two persons." 4 Charles E. Torcia, *Wharton's Criminal Law,* § 684 at 551 (15th ed. 1996); *see also Iannelli v. United States,* 420 U.S. 770, 773–74 & n. 5, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). This precept speaks of congruence: when a statutory crime requires coalescent conduct, a conspiracy charge is redundant since it requires proof of no additional element than that required by the underlying offense, because agreement is implicit upon proof of the target crime. *See Washington v. Langworthy,* 92 Wash.2d 148, 594 P.2d 908, 910 (1979) ("Where a substantive crime necessarily requires the concerted participation of two persons, we may say that an agreement between those two persons is implied."); *see also* 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.4(c)(4) (2nd ed. 2003). However, the United States Supreme Court has made clear that "the broadly formulated Wharton's Rule does not rest on principles of double jeopardy * * *. Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli,* 420 U.S. at 782, 95 S.Ct. 1284.[6]

While the traditional Wharton's Rule offenses were limited to "dueling, bigamy, adultery, and incest, * * * the buying and selling of contraband goods" has been added to the list. 2 LaFave, § 12.4(c)(4) at

---

6. In the sense that Wharton's Rule is simply a tool of statutory construction, we note—without reaching any conclusion with regard to Rhode Island's Uniform Controlled Substances Act—that the federal government has held Wharton's Rule inapplicable to certain statutory schemes. *See, e.g., Iannelli v. United States,* 420 U.S. 770, 791, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (holding "that the history and structure of the Organized Crime Control Act of 1970 manifest a clear and unmistakable legislative judgment that more than outweighs any presumption of merger between the conspiracy * * * and the consummation of that substantive offense"); *Gebardi v. United States,* 287 U.S. 112, 123, 53 S.Ct. 35, 77 L.Ed. 206 (1932) (holding the Wharton's Rule principle was abrogated in the Mann Act by Congress's failure to condemn a woman's mere acquiescence to interstate travel for immoral purposes); *United States v. Bommarito,* 524 F.2d 140, 143–44 (2d Cir.1975) (holding that the "structure and legislative history of the [Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*] provide persuasive evidence that * * * Congress did intend that a conspiracy to violate [that] Act should constitute a separate crime in addition to the substantive offense"). In addition, at least two states, including our northern neighbor Massachusetts, have reached similar conclusions with regard to analogous enactments. *See, e.g., Commonwealth v. Cantres,* 405 Mass. 238, 540 N.E.2d 149, 152 (1989) (following *Bommarito,* and holding that the all-inclusive statutory language of the Massachusetts Controlled Substances Act evinced a legislative intent that Wharton's Rule should not bar conspiracy prosecutions under that law); *State v. Erickson,* 315 N.W.2d 332, 334–35 (S.D.1982) (same).

319. Indeed, one commentator has aptly explained that "[w]hen the sale of some commodity, such as illegal drugs, is the substantive crime, the sale agreement itself cannot be the conspiracy, for it has no separate criminal object." *United States v. Lechuga,* 994 F.2d 346, 349 (7th Cir. 1993); *see also Nebraska v. Utterback,* 240 Neb. 981, 485 N.W.2d 760, 770 (1992), *overruled on other grounds, State v. Johnson,* 256 Neb. 133, 589 N.W.2d 108, 114–15 (1999). ("Wharton's Rule * * * exempts from prosecution for conspiracy to commit delivery or distribution either of the participants in the transfer of a controlled substance."). The presence of a third conspirator to a crime requiring only two participants for its commission, however, transforms the conspiratorial agreement into an offense distinct from any agreement implicit in the target crime, thereby rendering Wharton's Rule inapplicable. *See* 2 LaFave, § 12.4(c)(4) at 319 ("[T]he prevailing view is that the Wharton rule does not apply when the number of conspirators exceeds the essential participants in the contemplated crime."); *see also Iannelli,* 420 U.S. at 782–83 n. 15, 95 S.Ct. 1284; *Gebardi v. United States,* 287 U.S. 112, 121–22 & n. 6, 53 S.Ct. 35, 77 L.Ed. 206 (1932); *United States v. Rashwan,* 328 F.3d 160, 164 (4th Cir.2003); *United States v. Phillips,* 959 F.2d 1187, 1190 (3d Cir. 1992); *United States v. Rueter,* 536 F.2d 296, 298 (9th Cir.1976); *United States v.*

*Bommarito,* 524 F.2d 140, 144 (2d Cir. 1975); *People v. Laws,* 155 Ill.2d 208, 184 Ill.Dec. 430, 613 N.E.2d 747, 751 (1993); *Langworthy,* 594 P.2d at 910.

We think defendant confounds the facts of his own conviction. It is clear from defendant's brief that he is under the impression he was charged with conspiring with *Clement* to deliver cocaine to *Clement.* Had this been the case, perhaps the conspiracy count would not lie; we are not called upon to decide this issue, however, and we decline to adopt Wharton's Rule. However, viewed in a light most favorable to the state, the state's evidence demonstrated that defendant was charged with conspiring with Clement to deliver cocaine to *Det. A'Vant,* and therefore the conspiratorial agreement was a wholly distinct and chargeable offense along with the substantive delivery count. Detective A'Vant's presence in the delivery scheme implicated more persons than necessary to effect the delivery charge, thereby precluding application of Wharton's Rule.[7] Therefore, we hold the trial justice did not err in denying defendant's motion for acquittal.

 The defendant also contends that the trial justice erred in denying his motion for judgment of acquittal on the resisting arrest count. The defendant maintains that it was just as reasonable for him to believe that the arresting detectives

---

7. The defendant suggests that Det. A'Vant could not have been considered a legitimate party to the charged conspiracy under Rhode Island law. We assume this is a reference to Rhode Island's common law, bilateral formulation of conspiracy, requiring the participation of at least two parties, each with the capacity for culpability. *See* 2 Wayne R. La-Fave, *Substantive Criminal Law* § 12.4(c)(4)(1) at 315 (2nd ed. 2003) (labeling the traditional conspiratorial relationship as "bilateral or multilateral"). Because there were two conspirators apart from Det. A'Vant in this case—defendant and Clement—our bi-

lateral conspiracy requirement does not preclude defendant's prosecution. *See, e.g., United States v. Ramirez,* 350 F.3d 780, 785 (8th Cir.2003) (noting the well-established rule that no conspiracy will lie between a *single* defendant and a government agent); *State v. Colon,* 257 Conn. 587, 778 A.2d 875, 883 n. 16 (2001) ("[A] [*single*] defendant's agreement with a police officer or police agent to commit a crime does not satisfy the requirement in § [Conn. Gen.Stat. Ann.] 53a–48 that there be some other person, with culpable intent, who agrees with the defendant to violate the law.").

were, in fact, burglars, apparently because of their plain-clothes appearance and the absence of any accompanying "uniformed brethren." Because the crime of resisting arrest requires a *reasonable* belief, defendant argues, he could not have been found guilty.

 The crime of resisting arrest in this jurisdiction is as follows:

"It shall be unlawful for any person to use force or any weapon in resisting a legal or an illegal arrest by a peace officer, if the person has reasonable ground to believe that he or she is being arrested and that the arrest is being made by a peace officer." Section 12–7–10(a).

This Court has interpreted 12–7–10 to require an individual pursued by police to "submit peacefully and, if he has been unlawfully arrested, * * * pursue his remedy in the courts." *State v. Hurteau*, 810 A.2d 222, 225 (R.I.2002) (quoting *State v. Gelinas*, 417 A.2d 1381, 1385 (R.I.1980)). Of course, one may be privileged to use self-defense against a police officer, and thereby entitled to an appropriate jury instruction, in the face of *excessive* force. *Id.* (citing *State v. Ramsdell*, 109 R.I. 320, 327, 285 A.2d 399, 404 (1971)); *Gelinas*, 417 A.2d at 1384.

The state offered sufficient evidence to support a finding that a reasonable person in defendant's position should have be-lieved he was being arrested by the police. First, Det. A'Vant testified that upon returning to 55 Daboll Street to arrest defendant both he and Det. Zuena identified themselves as police officers twice: once as they entered the backyard and again as they entered the rear entrance of the dwelling. In addition, Det. Zuena testified that as soon as Det. A'Vant pointed out defendant walking up a flight of stairs to the second floor of the dwelling, Det. Zuena proclaimed, "Yo. Yo. Police. Police," and then defendant ran. Finally, Det. A'Vant gave testimony that at least three other officers had accompanied him and Det. Zuena to the scene. Viewing the evidence in its entirety and in a light most favorable to the state, we are of the opinion the trial justice properly denied defendant's motion for judgment of acquittal on the resisting arrest count.

## C

### Jury Instruction

 The defendant next asserts that the trial justice erred in giving a flight instruction in her charge to the jury.[8] He maintains that because he reasonably believed Detectives A'Vant and Zuena were not, in fact, police officers, but rather ill-willed criminals, the state presented insufficient evidence for the trial justice to conclude that the jury could infer guilt from defendant's flight.

---

**8.** The defendant has objected only to the mere giving of the flight instruction, and not the content of the trial justice's charge. Nevertheless, the trial justice's instruction was as follows:

"Evidence of flight may be a circumstance bearing on the question of guilt. The relevancy of flight as evidence of guilt, however, depends on the degree of confidence with which a chain of inferences can be followed. These are the things to consider: Number one, something the defendant did, led him to flee; number two, that he fled out of consciousness of the guilt; number three, that his consciousness of the guilt concerned the crime charged; number four, that his consciousness of guilt reflects actual guilt of a crime charged. The more immediate in time the flight is to the crime charged, the stronger the inference.

So the bottom line is, that is something for you to consider as you consider all other facts and circumstances in this case. And you give it the weight you feel it's entitled to, if, in fact, you find that there was such evidence in this case."

■ In *State v. Gomez,* 848 A.2d 221 (R.I.2004), this Court explained that a trial justice's decision to give a flight instruction simply depends upon whether "[a] reasonable jury could infer consciousness of guilt" from a totality of evidence produced at trial. *Id.* at 230–31 (quoting *State v. Correia,* 707 A.2d 1245, 1249 (R.I.1998)). "The flight instruction merely asks the jurors to consider whether defendant undertook certain actions with a consciousness of guilt; the instruction does not require that they infer a consciousness of guilt from the flight alone." *Id.* at 231.[9] Thus, a trial justice's decision to administer a flight instruction will not be disturbed unless there is an obvious paucity of evidence tending to allow a reasonable juror to infer guilt.

As discussed above, we think the state presented sufficient evidence to support the trial justice's decision to include a flight instruction in the jury charge. Detective Zuena's testimony that defendant attempted to abscond once he heard, "Yo. Yo. Police. Police," was, by itself, sufficient to warrant a flight instruction, and to allow the jury to draw what inferences it may from the evidence.

### D

### Coconspirator's Testimony

■ Finally, defendant insists that the trial justice erred by allowing the state to impeach Clement with his guilty plea for conspiring with defendant to sell cocaine to Det. A'Vant. At trial, Clement, a defense witness, testified inconsistently with the testimony of Det. A'Vant, prompting the state to seek to impeach his credibility with his guilty plea to the instant conspiracy. Although, as defendant admits, there is dispositive law from this Court at odds with his position, he maintains that the state's inordinately weak case renders this evidence unduly prejudicial.

■ "It is well settled that this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling 'constitutes an abuse of the justice's discretion that prejudices the complaining party.'" *State v. Hallenbeck,* 878 A.2d 992, 1015 (R.I.2005) (quoting *Gomez,* 848 A.2d at 232); *see also State v. Dellay,* 687 A.2d 435, 439 (R.I.1996). This Court subscribes to the "well-established principle of law that use of a coconspirator's guilty plea or conviction as substantive proof of a defendant's complicity is not admissible in evidence." *State v. Braxter,* 568 A.2d 311, 316 (R.I.1990) (quoting *State v. Parente,* 460 A.2d 430, 434 (R.I.1983)). "However, such evidence is admissible and not unduly prejudicial when introduced to impeach the credibility of a previously convicted defendant testifying in a codefendant's trial." *Id.* In addition, we have imparted upon a trial justice the "utmost responsibility to instruct the jury on the limited evidentiary use of a guilty plea or conviction." *Id.*

We hold that the trial justice did not abuse her discretion by allowing the state to impeach Clement with his conspiracy plea. Not only do we note that the state's case was not so weak to render this evidence any more prejudicial than it other-

---

9. In *State v. Cooke,* 479 A.2d 727 (R.I.1984), we set forth the four possible inferences to be drawn from evidence of flight:

"The relevancy of flight as evidence of a defendant's guilt, however, depends on the degree of confidence with which a chain of inferences can be followed: (first inference) something the defendant did led him to flee, (second inference) he fled out of consciousness of guilt, (third inference) his consciousness of guilt derived from consciousness of guilt concerning the crime charged, and (fourth inference) his consciousness of guilt concerning a crime charged reflects actual guilt of the crime charged." *Id.* at 732–33.

wise may have been, but also the trial justice gave a timely and effective cautionary instruction about the appropriate use of Clement's plea. The courts of this state will not countenance a defendant's calling as a witness a coconspirator who has admitted guilt on the one hand, yet crying foul when that witness is confronted with his admission in a separate proceeding.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.