**STATE**

v.

**Daniel GRANT.**

**No. 2005–163 C.A.**

Supreme Court of Rhode Island.

May 13, 2008.

Lauren S. Zurier, Esq., Providence, for Plaintiff.

Marie Roebuck, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This case comes before us on the appeal of the defendant, Daniel Grant, from a conviction of one count of aiding and abetting the crime of possession of marijuana with intent to deliver in violation of G.L. 1956 § 11–1–3. The defendant asserts on appeal that the trial justice erred in denying his motion for a judgment of acquittal and his motion for a new trial because, he contends, the evidence that the prosecution presented did not support a verdict of aiding and abetting the possession of marijuana with intent to deliver—because, he further contends, the evidence did not establish the existence of a shared unlawful purpose to sell marijuana.

The defendant also argues that the prosecution's failure to reveal a change in the bail status of a witness for the prosecution, as well as the prosecution's failure to provide the defense with a copy of a federal proffer letter agreement which that witness had signed, impaired his trial strategy and also negatively impacted his ability to cross-examine that witness and therefore should have resulted in the granting of defendant's motion to pass the case.

For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Travel

The defendant was indicted on October 16, 2002 for: (1) aiding and abetting the crime of possession of marijuana with intent to deliver between the dates of January 1, 1999 and December 31, 2001; (2) aiding and abetting the crime of possession of marijuana with intent to deliver on January 5, 2002; (3) solicitation for the delivery of Vicodin on February 11, 2002; and (4) solicitation for delivery of marijuana on February 11, 2002. A jury trial was conducted on seven dates between March 31 and April 12, 2004. The following facts are drawn from the testimony of the various witnesses who testified at that trial.

### A. *Some Necessary Background Information*

Dennis Medeiros [1] testified at trial and stated that he and defendant had been friends since high school, at which time they both resided in East Providence; he stated that they had come to know each other in the early 1980s and had become "good friends." Mr. Medeiros explained that he and defendant had spent time at each other's homes during high school and that he was familiar with members of defendant's family. Even though their involvement with various girlfriends and with their careers had caused them to grow apart in the years after high school, they nevertheless continued to be "still good friends."

After high school, and while he and Mr. Medeiros were still friends, defendant became a police officer for the City of Pawtucket. A number of defendant's family members have also served as police officers in Rhode Island.

Mr. Medeiros's career proceeded in a different direction: he became a marijuana dealer. Despite their activities on opposite sides of the law, however, Mr. Medeiros testified that he and defendant remained friends.

On February 13, 2002, Mr. Medeiros was arrested and his residence was raided by the East Providence police. During the raid, the police recovered three pounds of marijuana, scales and paperwork related to the dealing of marijuana, and several firearms. In the course of the February 13 raid at Mr. Medeiros's residence, police also found defendant's police business card.

When Mr. Medeiros learned that defendant had informed law enforcement offi-cials of the drug business that Mr. Medeiros had been operating, Mr. Medeiros revealed to his police interrogators that defendant had previously assisted him with his marijuana dealing operation. Mr. Medeiros also told the interrogators that he had given defendant marijuana.

Following Mr. Medeiros's revelation of this information about defendant, defendant was arrested and indicted on two counts of aiding and abetting the crime of possession with intent to deliver marijuana and on two counts of criminal solicitation of the delivery of narcotics.

### B. The Testimony of Detective Robert Tefft

During defendant's trial, Robert Tefft, a detective in the Narcotics Unit Special Squad of the Pawtucket Police Department, testified that, on December 3, 2001, he and his partner, Detective Danny Dolan, met with Drug Enforcement Administration Special Agent Chris Grenier and defendant. The meeting was arranged for the purpose of discussing certain information about narcotics dealing of which Special Agent Grenier had been advised during an earlier meeting with defendant at a bar in Providence.

During the December 3 meeting attended by Detective Tefft, Detective Dolan, Special Agent Grenier, and defendant, defendant revealed that Mr. Medeiros was dealing large quantities of marijuana. Detective Tefft recalled in his testimony that, during that December 3 meeting, defendant had related an incident in which he had asked Mr. Medeiros "point blank" if he was dealing marijuana and Mr. Medei-

---

1. As we narrate in greater detail later in this opinion, the East Providence home of Mr. Medeiros was raided by the police in February of 2002. After the prosecution promised that he would not be sentenced to serve more than ten years in prison, Mr. Medeiros pled guilty to various offenses, including possession of marijuana with intent to deliver.

The information contained in this introductory "background" section is drawn from the testimony that Mr. Medeiros offered in defendant's trial.

ros had confirmed that he was in fact dealing marijuana. Detective Tefft further testified that defendant had indicated that his questioning of Mr. Medeiros about that subject had occurred two or three months prior to the December 3 meeting. According to Detective Tefft, defendant also stated during that meeting that Mr. Medeiros had smoked a marijuana cigarette in his presence; defendant added that he had recognized the odor as being that of marijuana.

The defendant furnished Detective Tefft with additional information about Mr. Medeiros during the December 3 meeting: he provided the detective with Mr. Medeiros's cell phone number, and he revealed that he had ascertained Mr. Medeiros's voicemail security code and that he had listened to a number of messages on Mr. Medeiros's phone. He also advised Detective Tefft that Mr. Medeiros stored marijuana in his basement in East Providence; he added that Mr. Medeiros also kept the following items in his residence: video surveillance equipment, a safe, packaging paraphernalia, and proceeds from the sale of narcotics. He also told Detective Tefft that Mr. Medeiros had requested that he check the serial number of a particular firearm that Mr. Medeiros possessed in order to determine whether it had been reported as stolen; defendant informed the detective that he had checked twice and had learned that the firearm had not been reported as stolen.

According to the testimony of Detective Tefft, defendant's stated reason for revealing the drug dealing operation of his friend was that he was "tired of Dennis Medeiros making large amounts of monies dealing narcotics when he in fact as a police officer was making nowhere near what [Mr.] Medeiros was." However, when Detective Tefft offered defendant an opportunity to play a proactive role in the investigation of

Mr. Medeiros, defendant declined. Detective Tefft observed in his testimony at trial that he "thought it odd that the information would not have been brought to the Pawtucket Police Department * * * [and that defendant] decided to come forward with the information regarding * * * a very good friend of his." The detective stated: "[The situation] [p]ut a lot of questions in my mind."

Detective Tefft further testified that, at the above-referenced December 3 meeting, he informed defendant that an investigation would be opened concerning Mr. Medeiros, that the East Providence police department would be contacted, and that he would seek authorization for intercepting Mr. Medeiros's cell phone conversations.

### C. The Testimony of Dennis Medeiros

Mr. Medeiros also testified at the trial. In his testimony, he explained the particulars of the drug operation that he had orchestrated from his basement. Mr. Medeiros would purchase large quantities of marijuana and would then divide the marijuana into smaller bags to sell at a profit, with prices for each small bag ranging from $10 to $100. Mr. Medeiros testified that in 2001 defendant had visited him while he was dividing the marijuana into bags and that defendant had witnessed him lighting a "joint." According to Mr. Medeiros, he and defendant had agreed that defendant would "look the other way" with respect to the drug operation that Mr. Medeiros was running. Mr. Medeiros also testified that he had smoked marijuana with defendant on numerous occasions since high school and that he had given or sold marijuana to defendant a number of times between 1999 and 2001, sometimes on a weekly basis.

During the trial, a recording of phone calls between Mr. Medeiros and defendant

was played, and Mr. Medeiros interpreted for the jury various code words for drugs that defendant had used during those phone calls.

Mr. Medeiros described in his testimony various forms of assistance that defendant had given him so that he might evade police detection of his drug business. He stated that defendant had checked the license plates of suspicious cars in his neighborhood. According to Mr. Medeiros, defendant had explained to him that undercover police officers often use cars with "fake plates." A license plate check indicating that a car was not registered to the plate that it bore could, according to Mr. Medeiros's testimony about what defendant had explained to him, indicate that an undercover police officer was using that car. Mr. Medeiros also stated that defendant had checked the serial number of his rifle to determine whether or not it was stolen.

It was further Mr. Medeiros's testimony that defendant warned him in advance about possible police raids; he stated that defendant would not give specific information about forthcoming raids, but would encourage him to slow down his drug dealing at certain points in time. After receiving such a warning from defendant, Mr. Medeiros would then hide his drugs and inform his friends about a possible raid. He testified about a specific occasion in January of 2002 when defendant allegedly told him that he should "lay low" because of an impending raid and warned Mr. Medeiros that his cell phone might be tapped. Mr. Medeiros testified that defendant did not tell him specifically that he was the target of an investigation, but did tell him to "chill out for a while" and to be "cautious." According to Mr. Medeiros, defendant had heard Mr. Medeiros's name being mentioned at the East Providence police station.

### D. *The Testimony of Vivian Fanning*

Vivian Fanning, a former girlfriend of Mr. Medeiros, corroborated in her testimony some of the just-described statements that Mr. Medeiros made in the course of his testimony. She testified that Mr. Medeiros made deliveries of marijuana to defendant and smoked marijuana with him; she also testified that defendant would advise Mr. Medeiros to "stay low" when the police were to be in the area. In her testimony, Ms. Fanning stated that she had informed the East Providence police about Mr. Medeiros's drug dealing after the two of them had ended their relationship in August of 2001, and she also stated that she had informed the East Providence police about Mr. Medeiros's involvement with a Pawtucket police officer named Danny. Ms. Fanning also corroborated Mr. Medeiros's testimony about defendant's having checked license plate numbers for him.

### E. *The Testimony of Sergeant Paul Catarina*

Sergeant Paul Catarina of the Pawtucket Police Department testified at trial and provided the jury with a further description of activities engaged in by defendant. Sergeant Catarina confirmed that, on October 18, 2001, defendant had used a laptop in his police cruiser to check the serial number of a rifle that was later seized from Mr. Medeiros's residence. Sergeant Catarina also recalled that Mr. Medeiros had described his relationship with defendant to him and how defendant had checked plates and gun serial numbers for him. Sergeant Catarina was not able to corroborate the license plate checks, however, because of the great volume of license plate checks that had been done on defendant's laptop computer.

### F. The Defendant's Motion to Pass the Case; Further Testimony of Dennis Medeiros

Defense counsel interrupted his cross-examination of Sergeant Catarina in order to move to pass the case.[2] That motion was based on information which defense counsel had received to the effect that Mr. Medeiros's bail was not the $100,000 surety (as indicated in the cooperation agreement[3]), but was actually personal recognizance in the same amount. Defense counsel further based his motion to pass the case on the fact that it was not until mid-trial that he had received a copy of a federal proffer letter that Mr. Medeiros had signed.[4] Defense counsel argued that his motion to pass the case should be granted because he had been unable to cross-examine Mr. Medeiros with respect to either the change concerning his bail or the federal proffer letter. The trial justice declined to rule on defendant's motion to pass the case at that time and deferred ruling on it until defense counsel had had the opportunity to cross-examine Mr. Medeiros on those two issues. Mr. Medeiros was in fact recalled so that defense counsel could cross-examine him in this regard.

During the renewed cross-examination, Mr. Medeiros stated (1) that he had forgotten about the federal proffer letter agreement which he had signed on March 4, 2002; and (2) that, when he had been cross-examined the first time and did not mention the federal proffer letter as a document he had signed, it was because he had been thinking only about the cooperation agreement he had signed. On redirect, Mr. Medeiros testified that he had not thought that the federal proffer letter was related to the instant prosecution of Mr. Grant. After the further questioning of Mr. Medeiros was concluded, defense counsel again moved to pass the case, and

**2.** "In Rhode Island, the terms 'motion to pass the case' and 'motion for a mistrial' are synonymous." State v. O'Connor, 936 A.2d 216, 218 n. 2 (R.I.2007).

**3.** Mr. Medeiros had executed a "cooperation agreement" with the Attorney General on July 15, 2002. Pursuant to that document, Mr. Medeiros, among other stipulations, (1) agreed to provide the prosecution with information about defendant, (2) admitted to having engaged in illegal narcotics operations, and (3) agreed to assist the Attorney General in its investigation into defendant's suspected illegal activity. He agreed to plead guilty to certain specified offenses and to accept an aggregate sentence of ten years at the Adult Correctional Institutions with the first five years to serve and the remaining five to be suspended, with supervised probation.

**4.** During cross-examination, the following exchange occurred:

"[DEFENSE COUNSEL]: Have you made any deals or agreement with the Federal government * * *?

"[MR. MEDEIROS]: No, I did not.
"[DEFENSE COUNSEL]: Have you received any proffer letter from the United States Attorney's Office that you would not be charged with any of the violations of the Interstate Drug Control Act?
"[MR. MEDEIROS]: Not that I am aware of, no."
Typically, a federal proffer letter is utilized by federal prosecutors in order to secure information by means of an informal debriefing of an apparently knowledgeable person; in exchange, the government promises not to offer the proffered statement at a subsequent trial of that person. Richard B. Zabel & James J. Benjamin, Jr., "Queen for a Day" or "Courtesan for a Day": The Sixth Amendment Limits to Proffer Agreements, 15 No. 9 White-Collar Crime Rep. 1 (2001). The proffer letter is sometimes called the queen for a day agreement; it is so "[n]amed after a long forgotten television show in which a member of the audience would be crowned queen and showered with gifts and service * * *." Thomas J. Farrell, An Overview of How Grand Juries Operate, 31 Champ. 26, 29 (2007).

the trial justice once again decided to defer her ruling on the motion.

### G. Testimony of Lieutenant Thomas Campbell

The final witness to testify was Lieutenant Thomas Campbell, a supervisor of the vice squad of the Pawtucket Police Department; he testified that his office organized all undercover operations for the Pawtucket Police Department. Lieutenant Campbell testified that, in a meeting on April 17, 2002 with defendant and Sergeant Catarina, he had informed defendant that he was a suspect in a criminal investigation; defendant then discussed his friendship with Mr. Medeiros and admitted that he had smoked marijuana since becoming a police officer.

The defendant told Lieutenant Campbell that he had sought to uncover Mr. Medeiros's drug operation as a means of securing for himself a position in the narcotics division of the Pawtucket Police Department. In the words of Lieutenant Campbell, defendant had stated that he wanted to "make a big arrest" so that the Chief would notice him. According to Lieutenant Campbell, the explanation that defendant offered for his involvement with Mr. Medeiros and his drug operation was that his "methods might not have been right, but [his] goal was to gain [Mr. Medeiros's] confidence and make a big arrest." When asked why he did not inform the police immediately when he saw bags of marijuana in a garage that Mr. Medeiros rented, defendant told Lieutenant Campbell, "[H]ow do I know it was not oregano?" The defendant told Lieutenant Campbell that he had checked license plates because he was "bored," and he admitted that he had told Mr. Medeiros that the "cops" were watching him on one occasion in September of 2001.

### H. Renewed Motion to Pass the Case and Motion for Judgment of Acquittal

At the close of the prosecution's case, defendant renewed his motion to pass the case and also made a motion for judgment of acquittal. He argued that his motion for judgment of acquittal with respect to the two aiding and abetting counts should be granted because the bill of particulars referenced an overlapping time frame with respect to count 1 and count 2; he made a similar argument with respect to the solicitation counts (counts 3 and 4).

Addressing defendant's motion to pass the case, the trial justice found that, although the information about the change in bail status and the federal proffer letter had not been intentionally withheld, it was nonetheless information that should have been disclosed to the defense. However, the trial justice went on to rule that the second cross-examination of Mr. Medeiros had fully and adequately explored those issues. The trial justice remarked that the cross-examination of Mr. Medeiros with respect to those issues was probably even more vigorous than it would have been had the information been disclosed to the defense earlier. Accordingly, she denied defendant's motion to pass the case.

The trial justice also denied defendant's motion for a judgment of acquittal. With respect to the aiding and abetting counts and to the solicitation counts, she found that they were not duplicative and that the defense had received fair notice of the particular charges. The trial justice also concluded that sufficient evidence supported each of the counts.

### I. The Jury's Verdict; Defendant's Motion for a New Trial; Defendant's Appellate Contentions

On April 13, 2004, the jury returned a verdict of guilty on counts 1, 3, and 4.[5] The

---

**5.** It will be recalled that defendant was indict-   ed on the following counts: (1) aiding and

defendant then moved to arrest judgment on counts 3 and 4, and he also moved for a new trial. The trial justice arrested judgment on counts 3 and 4 and dismissed them; however, she denied defendant's motion for a new trial. As such, only defendant's conviction on count 1 (viz., the first aiding and abetting count) is at issue in the instant appeal. A judgment of conviction was entered on July 14, 2004, and defendant timely appealed.

The defendant contends on appeal that the trial justice erred in denying his motion for a judgment of acquittal; he argues that his actions did not indicate a shared unlawful purpose of dealing marijuana. The defendant argues that the weapon he checked was not proven at trial to have been used in Mr. Medeiros's marijuana operation and that his checking of license plates was not shown to have related to Mr. Medeiros's illegal activities. He furthermore contends that the "lay low" warning did not "amount to affirmative participation in a criminal act in furtherance of the common design, nor was this evidence sufficient to prove beyond a reasonable doubt a 'community of unlawful purpose' in aiding and abetting [Mr.] Medeiros with his possession and intent to distribute drugs."

In addition, defendant maintains that the trial justice erred in denying his motion to pass the case, which was based on the prosecution's failure to turn over the federal proffer letter and its failure to reveal Mr. Medeiros's change in bail status.

Finally, defendant contends that the trial justice erred when she denied his motion for a new trial with respect to count 1

of the indictment. The defendant argues that the "state failed to present material evidence to support the charge of aiding and abetting the possession of marijuana with the intent to distribute the same."

The prosecution, for its part, maintains that the trial justice did not overlook or misconceive material evidence and was not otherwise clearly wrong. The prosecution takes issue with defendant's argument that his actions did not amount to aiding and abetting Mr. Medeiros's drug operation; it contends that defendant's conviction for same was proven beyond a reasonable doubt. The prosecution also argues that defendant has not demonstrated that the trial justice erred when she concluded that defendant had had an ample and fair opportunity to cross-examine Mr. Medeiros concerning his changed bail status and the federal proffer letter.

## Standard of Review

■　In this Court's review of a denial of a motion for judgment of acquittal, we employ the same standards as the trial court. See State v. Hesford, 900 A.2d 1194, 1200 (R.I.2006). We view the evidence in the light most favorable to the prosecution, giving full credibility to its witnesses, and drawing all reasonable inferences consistent with guilt. Id.; see also State v. Otero, 788 A.2d 469, 475 (R.I.2002). If such evidence, "viewed in this light, is sufficient to support a verdict of guilty beyond a reasonable doubt, the motion must be denied." State v. Mondesir, 891 A.2d 856, 861 (R.I.2006).

■■■　With respect to defendant's motion to pass the case, a trial justice's ruling as to such a motion is entitled to great

abetting the crime of possession of marijuana with intent to deliver between the dates of January 1, 1999 and December 31, 2001; (2) aiding and abetting the crime of possession of marijuana with intent to deliver on January 5,

2002; (3) solicitation for the delivery of Vicodin on February 11, 2002; and (4) solicitation for delivery of marijuana on February 11, 2002.

weight. *See State v. Mendoza,* 889 A.2d 153, 158 (R.I.2005); *see also State v. Briggs,* 886 A.2d 735, 760 (R.I.2005); *State v. Lassiter,* 836 A.2d 1096, 1102 (R.I.2003). The trial justice's decision in this regard will be disturbed on appeal only if he or she was clearly wrong. *See Mendoza,* 889 A.2d at 158. We have explained that the justification for such deference is that the trial justice "possesses a front-row seat at the trial" and is therefore in an ideal position to make such decisions. *State v. Mc-Manus,* 941 A.2d 222, 234 (R.I.2008) (internal quotation marks omitted); *see also Mendoza,* 889 A.2d at 158.

■ When a trial justice makes a ruling on a defendant's motion for a new trial, the trial justice acts as a thirteenth juror, independently assessing the weight of the evidence and the credibility of witnesses. *State v. Gomez,* 848 A.2d 221, 234 (R.I. 2004). A trial justice's ruling on a defendant's motion for a new trial "will not be overturned unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *State v. Bergevine,* 942 A.2d 974, 981 (R.I.2008) (internal quotation marks omitted).

### Analysis

#### A. *The Motion for Judgment of Acquittal*

■ Although we observe that defendant may have waived his argument with respect to the sufficiency of the evidence for the aiding and abetting counts,[6] we nevertheless conclude that the trial justice properly denied defendant's motion for a judgment of acquittal.

Under § 11–1–3, "[e]very person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender * * *."

■ To be found guilty of aiding and abetting, a defendant must have participated in affirmative conduct; it must be shown that the defendant aided and abetted in the commission of the crime—"mere negative acquiescence is insufficient to connote guilt." *State v. Diaz,* 654 A.2d 1195, 1202 (R.I.1995). The determination of "what combination of evidence and inferences will be legally sufficient to support a verdict of guilty as an aider and abettor" is made on a case-by-case basis. *State v. Eddy,* 519 A.2d 1137, 1143 (R.I. 1987) (internal quotation marks omitted).

According to Mr. Medeiros's testimony, defendant checked license plates for him in order to learn whether undercover police officers were conducting surveillance in his neighborhood. From the testimony of Mr. Medeiros, Ms. Fanning, and Lieutenant Campbell, the jury and the trial justice were informed about the "lay low" and "stay low" warnings that defendant had given Mr. Medeiros. Testimony also indicated that defendant had checked the serial number of a firearm that Mr. Medeiros possessed.

On the day that she sentenced defendant, the trial justice cogently and succinctly summarized her impressions as to what had been disclosed in the course of

---

**6.** In his motion for a judgment of acquittal, defendant argued that the charges were duplicative in view of the fact that the bill of particulars suggested overlapping time frames for the commission of the charged acts. He did not contend that the evidence was insufficient to convict him under the first count, so it is quite likely that he has not properly preserved the sufficiency argument for our review.

the trial. She spoke in pertinent part as follows:

> "Instead of reporting or arresting Medeiros, [defendant] chose to support Medeiros' criminal activity—by repeatedly getting drugs from him even while on duty and by guarding Medeiros against police detection, instructing him to lie low, and running license plates and/or running gun checks for him. * * * This [c]ourt cannot accept the proposition that [defendant] repeatedly solicited the drugs from Medeiros and materially assisted him in committing the crime * * * to garner his trust * * *." [7]

Viewing the trial evidence in the light most favorable to the prosecution and drawing all reasonable inferences consistent with guilt, we are satisfied that defendant's actions did indicate a shared unlawful purpose to sell marijuana. We therefore conclude that the trial justice did not err in denying defendant's motion for a judgment of acquittal. The testimony of the various witnesses for the prosecution was more than sufficient to establish some "[c]onduct of an affirmative nature," and not "mere * * * acquiescence." *Diaz*, 654 A.2d at 1202. Even if defendant did properly preserve for appellate review his argument that the evidence was insufficient to establish that he was guilty of aiding and abetting, we conclude that such argument is without merit.

## B.  *The Motion to Pass the Case*

■ The defendant's motion to pass the case focused on the alleged discovery violations that defendant contends the prosecution committed when it failed to (1) disclose a change in the bail status of Mr. Medeiros and (2) provide defense counsel with a copy of the federal proffer letter agreement that Mr. Medeiros had signed.

■ A trial justice considering an alleged discovery violation pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure should examine four factors: (1) the reason for nondisclosure; (2) the prejudice to the other party; (3) whether or not a continuance can rectify any such prejudice; and (4) any other relevant factors. *State v. Espinal*, 943 A.2d 1052, 1062 (R.I.2008); see also *State v. Boucher*, 542 A.2d 236, 241 (R.I.1988). This Court has additionally observed that "the trial justice is in the best position to evaluate whether any prejudice has resulted from noncompliance with discovery motions." *State v. Evans*, 668 A.2d 1256, 1259 (R.I. 1996).

We first note that the change in Mr. Medeiros's bail status from $100,000 surety to a $100,000 personal recognizance was not a change of sufficient magnitude to have any effect on the determination of his credibility *vel non;* we further note that Mr. Medeiros testified that he was not aware of his changed bail status. We also observe that the federal proffer letter, because it was not an inducement for Mr. Medeiros's testimony in the instant case, was not directly relevant—since he had executed a separate agreement with the state, of which defendant was aware. When the trial justice gave defendant an opportunity to cross-examine Mr. Medeiros on that issue, Mr. Medeiros testified that he did not believe the letter related to the instant prosecution.

Moreover, even if we were to conclude that such information was material to defendant's case, it is significant that the trial justice, acting out of an abundance of

---

**7.**  We recognize that the quoted language was not actually uttered at the time that the trial justice denied the motion for judgment of acquittal, but it does summarize in a particularly logical manner the evidence that was before her at that juncture.

caution after the above-referenced discovery issues were brought to her attention, allowed defense counsel to recall Mr. Medeiros so that counsel could conduct a vigorous cross-examination of Mr. Medeiros with respect to said issues. Because we conclude that the trial justice's ruling on defendant's motion to pass the case was not clearly erroneous, there is no basis for a reversal on that ground. *See Mendoza*, 889 A.2d at 158.

## C. *The Motion for a New Trial*

■ In his brief to this Court, defendant argues that the trial justice should have granted him a new trial because the evidence brought forth at trial did not establish beyond a reasonable doubt that defendant committed the offense of aiding and abetting. He asserts that the evidence of checking license plates, running a firearm check, and telling Mr. Medeiros to "lay low" does not amount to evidence sufficient to convict him of aiding and abetting the crime of possession with intent to distribute.

■ We have previously observed that, acting as "a thirteenth juror" and exercising independent judgment with respect to the credibility of witnesses and the weight of the evidence, a trial justice ruling on a motion for a new trial must engage in a series of analyses. *State v. Banach*, 648 A.2d 1363, 1367 (R.I.1994). First, the trial justice must "consider the evidence in light of the jury charge"; second, the trial justice must "independently assess the credibility of the witnesses and the weight of the evidence." *State v. Schloesser*, 940 A.2d 637, 639 (R.I.2007) (internal quotation marks omitted). Finally, the trial justice must "determine whether he or she would have reached a result different from that reached by the jury." *Id.* (internal quotation marks omitted). "If, after conducting this independent review, the trial justice

agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Gomez*, 848 A.2d at 234 (internal quotation marks omitted); *see also State v. Texieira*, 944 A.2d 132, 140 (R.I.2008).

In analyzing defendant's motion for a new trial, the trial justice reviewed the evidence concerning defendant's relationship with Mr. Medeiros, his running of license plates, and his having witnessed the drug operation on Mr. Medeiros's property. The trial justice further observed that "most of this information was confirmed by the defendant himself in his admissions to Lieutenant Campbell." The trial justice accordingly concluded that the evidence supported defendant's conviction for aiding and abetting, and she denied his motion for a new trial.

A trial justice's ruling on a motion for a new trial will not be overturned unless (1) it is clearly wrong or unless (2) he or she overlooked or misconceived material and relevant evidence relating to a critical issue in the case. *See Bergevine*, 942 A.2d at 981. Because defendant has not demonstrated that either of those criteria have been met, we uphold the trial justice's ruling with respect to the defendant's motion for a new trial.

## Conclusion

For the reasons delineated in this opinion, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case may be remanded to the Superior Court.