STATE

v.

Evaristo **ROSARIO.**

No. 2008–319–C.A.

Supreme Court of Rhode Island.

March 11, 2011.

Christopher R. Bush, Department of Attorney General, for State.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, Evaristo Rosario, appeals from a judgment of conviction entered after a jury trial in the Superior Court for Providence County. On appeal, the defendant contends that the trial justice erred by denying his motions to pass the case and by overruling an evidentiary objection.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are satisfied that this appeal may be decided without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On June 23, 2006, defendant, Evaristo Rosario, was charged by criminal informa-

tion with assault with a dangerous weapon, to wit, a motor vehicle, on February 22, 2006, in violation of G.L.1956 § 11–5–2. As will become clear later in this narrative, the person who allegedly was assaulted on February 22, 2006 was Providence Police Officer John Reposa; significantly, as will be described below, there had been another interaction between Officer Reposa and Mr. Rosario in May of 2003 at Rhode Island Hospital in Providence.

## A

### The Motions *in Limine*

On November 16, 2007, defendant filed a motion *in limine*, whereby he sought to preclude the prosecution from introducing evidence of (1) defendant's "alleged altercations with the Providence Police" or (2) defendant's "threatening statements to Officer John Reposa or any other Providence Police Officer."

In his motion *in limine*, defendant argued: (1) that such alleged prior altercations or threatening statements were not necessary elements of the crime charged; (2) that the alleged prior altercations and threatening statements were inadmissible under Rule 404(b) of the Rhode Island Rules of Evidence; and (3) that the probative value of such evidence, if any, was greatly outweighed by its prejudicial effect. The defendant further contended that, if the court should allow the use of such evidence, it should be used for impeachment purposes only.

On the same day, the prosecution also moved *in limine*, requesting that "the State be allowed to call Providence Police Inspector Francisco Colon to give testimony during the defendant's trial as to the circumstances surrounding an incident which occurred at Rhode Island Hospital on May 24, 2003 * * *."

On December 10, 2007, just prior to the commencement of trial, the trial justice stated on the record that she had considered the two motions *in limine* after having conferred with counsel. The trial justice then made several rulings with respect to the two motions.

First, concerning "the incident at the hospital," [1] the trial justice ruled that admissible evidence would be limited to evidence of "an *interaction*" between defendant and the officer "that resulted in the officer attempting to take away the defendant's cell phone and the phone breaking." (Emphasis added.) She added that she would also deem admissible evidence of certain threatening statements, allegedly made by defendant at the time of the incident at the hospital.

Next, the trial justice said that she would deem admissible evidence of a complaint filed by Mr. Rosario "with Internal Affairs regarding Officer Reposa's conduct at the hospital and then a subsequent meeting and phone calls between Inspector Colon and the defendant." Focusing more specifically on defendant's complaint to Internal Affairs, the trial justice ruled (1) that she would "allow evidence that the defendant's complaint was not addressed in terms of compensation" and (2) that she would "apprise the jury that they cannot make any inference adverse to Officer Reposa regarding the outcome of the investigation [of defendant's complaint] as no such evidence has been placed before them."

---

1. It is undisputed that, years previously, there had been some sort of unpleasant interaction between Officer Reposa and defendant. That interaction, which related to defendant's use of his cell phone, took place at Rhode Island Hospital on a particular day in May of 2003. See the summaries of trial testimony, *infra*.

Finally, the trial justice said that she would allow evidence of "any specific reference or comments that the defendant made with regard to Officer Reposa." However, she added that she would preclude evidence of "generalized references to threats of assault on police officers in general or references of intended conduct[ ] on Providence Police."

The trial justice also clearly indicated that it was possible that she might have to revisit her *in limine* rulings; she stated: "It may be that further evidence regarding the interaction between the defendant and Inspector Colon becomes admissible depending on what the defendant says." [2]

## B

### The Trial

A jury trial was held in the Superior Court for Providence County on December 10, 11, and 12, 2007. We describe below what transpired at that trial to the extent necessary to provide context for the issues raised on appeal.

### 1. The Prosecution's Opening Statement and Defendant's First Motion to Pass the Case

During his opening statement, the prosecutor referred to the above-referenced incident at Rhode Island Hospital in May of 2003 as an "altercation." More specifically, the prosecutor stated: "The defendant, when Officer Reposa went up to ask him to get off the phone[,] an argument ensued and [an] altercation ensued and the defendant's cell phone was broken."

At the close of the prosecution's opening statement, defense counsel moved to pass the case, alleging (1) that the use of the word "altercation" in the opening statement was not permissible in light of the trial justice's *in limine* ruling and (2) that the use of that word was prejudicial. Counsel contended that the word "altercation" could suggest to "lay people * * * that [defendant] was being a wiseguy [and] was out of control * * *."

In addressing defendant's motion to pass, the trial justice said that the purpose of her *in limine* ruling with respect to evidence of the incident at the hospital had been "to avoid * * * any reference to alcohol or intoxication * * *." She then stated:

"[T]he word altercation as framed in an opening which is not evidence certainly suggests that the request was made and the phone ended up being broken. That is it. And that is what I'm allowing. None of the other circumstances surrounding their interaction."

The trial justice further observed that there "has to be some context for the broken phone." The trial justice stated that the use of the word altercation did not "[go] beyond" her prior ruling, and she denied the motion to pass the case. [3]

---

**2.** After the trial justice rendered her *in limine* rulings, counsel for defendant acknowledged that, if defendant were to testify "with respect to him being a peaceful person and [were to deny] ever making threats to Officer Reposa or police officers in general, that would certainly open the door to the State with regards to impeachment bringing up the general statement about the police."

**3.** It should be noted that, during her pretrial instructions, the trial justice had instructed the jury in pertinent part as follows:

"[A]n attorney's statements during an opening statement, not being the testimony and not being the evidence, are not evidence and may not be the basis upon which you all make any findings of fact in this case.

"Your determination of what the facts in this case are must await the actual evidence presented to you in the way of testimony, documents, and other physical evidence, if any."

## 2. The Testimony of Officer John Reposa

Officer Reposa testified at trial that, on February 22, 2006, he was in uniform while participating in a funeral escort as part of a motorcycle unit. He testified that the funeral procession began at a funeral home on Hawkins Street in Providence and set out for St. Ann's Cemetery in Cranston. He stated that, at one particular point in the course of the trip to the cemetery, it was necessary for him to dismount from his motorcycle to stop traffic coming from a Lowe's store so that "the procession [could] continuously move on to St. Ann's Cemetery."

It was Officer Reposa's testimony that he made eye contact with the driver of the first vehicle that was in the process of leaving the Lowe's store; the officer stated that he "had the vehicle stop with [his] hands and verbal command * * *." He added that he always makes eye contact with the driver of a vehicle that he is attempting to stop, so that the driver of the vehicle knows that he is "telling that particular car to stop." The officer testified that the just-mentioned first vehicle was a black Maxima and that, when he made eye contact with the driver of the black Maxima, he recognized that the driver was Evaristo Rosario. At that point in his testimony, Officer Reposa identified defendant in the courtroom as being Mr. Rosario.

The officer further testified that, after he and defendant made eye contact, defendant looked at him and smiled. Officer Reposa stated that he was approximately thirty feet away from defendant's vehicle at the time that eye contact was made.

The direct examination of Officer Reposa then proceeded to take a brief detour from the questioning about what transpired during the funeral procession on February 22, 2006; the purpose of that detour was to elicit testimony about the officer's first encounter with defendant. Officer Reposa testified that, on May 24, 2003, he was at Rhode Island Hospital in uniform and with his badge number ("686") displayed on his uniform. Officer Reposa answered the following question from the prosecutor in the affirmative: "Did you approach regarding the cell phone and then attempt to get [defendant] to stop speaking on the phone?" Officer Reposa further testified that the result of this interaction was that defendant's phone was broken.

Officer Reposa further testified that, after the phone was broken, defendant made two comments to the officer. The officer said that defendant first stated: "Mind your f——ing business and if you take my phone from me I will sue your a——." He added that defendant then stated: "You are f——ing done. Wait until you see what I do to you when I get out of here." It was Officer Reposa's further testimony that, as a result of the Rhode Island Hospital incident, defendant filed a complaint against him; however, when asked whether he was upset that defendant filed a complaint against him, the officer responded that he was not.

Officer Reposa then proceeded to give further testimony about the February 22, 2006 funeral escort and his attempt to stop cars that were leaving the Lowe's store. As to what ensued after defendant smiled at him from his black Maxima, Officer Reposa stated:

"After the defendant smiled at me, he accelerated towards me at a high rate of speed. I was forced to jump to the left. At that time, he at the last minute he swerved around me and accelerated at a high speed and fled the area * * *."

Officer Reposa testified that he "yelled at the defendant approximately three

times to stop." The officer proceeded to describe his "jump to the left" as defendant drove toward him—stating, "I ran to the left because I was afraid that he was going to collide with me." The officer added that he was in fear for his life. He stated that defendant's vehicle had come within "approximately six to eight feet" of him and that he would have been hit by the vehicle if he had not moved. The officer testified, however, that defendant's vehicle did not actually come into contact with him and that he did not sustain any injuries as a result of the incident.

It was Officer Reposa's further testimony that, after defendant drove away from the scene, he continued to escort the funeral procession and did not pursue defendant; the officer added that he is not allowed to pursue vehicles when he is performing motorcycle duties. He testified that, after he completed the funeral escort detail, he went to the Cranston Police Department to report what had occurred and to indicate that he wished to press charges and file a complaint.

### 3. The Testimony of Inspector Francisco Colon

Providence Police Inspector Francisco Colon testified that, at the time of trial and at all times pertinent to this case, he was "the department inspector," assigned to conducting internal investigations. He said that he was responsible for "reviewing complaints filed against officers." Inspector Colon further testified that he first became acquainted with defendant during two face-to-face meetings that occurred on September 1 and 3, 2003. According to Inspector Colon, during those meetings, Mr. Rosario referred to Officer Reposa and did so by alluding to the officer's badge number—viz., "Badge No. 686." It was Inspector Colon's testimony that, when speaking of Officer Reposa, defendant's "demeanor was always * * * angry,

upset and always referencing Badge 686 and often using profanity." Inspector Colon testified that, during their meetings, defendant referred to an incident involving Officer Reposa in which a cell phone "had broken or * * * got broken."

Inspector Colon then proceeded to testify about a number of voice mail messages that he received from defendant in May and June of 2004; he added that he had reviewed the phone calls prior to testifying at trial and "also had them transcribed." The inspector estimated that defendant, whose voice he recognized, left "[a]t least 20 if not more" voice mail messages during those two months.

The inspector testified that defendant would refer to "Badge 686" in his messages and "was angry, upset, [and] continued to talk about the cell phone * * * using profanity." When asked to elaborate regarding the profanity that defendant used, it was the inspector's testimony that he recalled defendant saying, among other things: "f——ing mother f——er," "f——ing police," and "f——ing Badge 686." The inspector added that defendant also referred to Badge 686 as "the devil." It was the inspector's further testimony that defendant also repeatedly referred to the complaint that he had filed regarding the cell phone incident. The inspector stated that defendant would often refer to the year and the date of the incident and would mention how much time had passed. The inspector testified as follows about one such call: "[Defendant] said '17 days and one year ago that f——ing mother f——er broke my phone' or words to that effect."

With respect to the complaint filed by defendant, Inspector Colon testified that Officer Reposa was never ordered to reimburse defendant for the broken cell phone. On cross-examination, however, Inspector Colon acknowledged that, at some point in

September of 2003, he did tell Mr. Rosario that he would make a recommendation that he be reimbursed for his cell phone. Inspector Colon explained what he had said to Mr. Rosario as follows: "I may have indicated that if it was inappropriate, if the phone was broken and there was misconduct that I would make a recommendation that he would be reimbursed." Inspector Colon also testified during cross-examination that he did not recall defendant ever making a specific threat concerning Officer Reposa.

### 4. The Testimony of Defendant, Evaristo Rosario

The defendant, Evaristo Rosario, testified that, on the morning of February 22, 2006, he drove a Nissan Maxima to the Lowe's store on Garfield Street in Cranston in order to "buy materials to fix [his] houses." He further testified that, although he did not know Officer Reposa personally, he had had a "couple of interaction[s]" with him. He testified that the first interaction occurred "in the hospital when [Officer Reposa] approached [him] and broke [his] cell phone." It was defendant's testimony that he did not recall seeing Officer Reposa at any time in February of 2006; he added that, on February 22, 2006 in particular, he was never requested to stop by a police officer, nor did he have any interactions with any police officers.

On cross-examination, defendant was asked whether or not he liked Officer Reposa. In response, defendant said: "Yes, I like him. He is an officer. *I respect authority.*" (Emphasis added.) When the prosecutor reacted to that broad statement by directly asking defendant whether he

respected authority, defendant responded: "Yes, sir."

As cross-examination continued, defendant acknowledged that he had referred to Officer Reposa in his complaint regarding the cell phone as having used his "devil hand to break [his] phone." The defendant also acknowledged that he was angry, upset, and mad at Officer Reposa "[b]ecause he broke [the] cell phone."

The prosecutor then returned to the respect for authority issue and sought to probe further into defendant's assertions about same. The following dialogue ensued:

"[PROSECUTOR]: Sir, you testified to this jury under oath that you respect all authority and you respect all Providence police officers; didn't you say that?

"[DEFENDANT]: Yes, sir.

"[PROSECUTOR]: And didn't you in your complaint indicate in handwriting [in] June of 2003, I think that all Providence police officers need help because they have been acting brutal to the community in Providence?"

■ At that point, counsel for defendant objected to the just-quoted line of questioning and made his second "motion to pass for mistrial." [4] In support of his motion, defense counsel argued at side bar that the *prosecutor* "opened the door, which was precluded during the motion in limine, [by asking] about all officers." It was defense counsel's contention that his "client did not open the door at all" and that defendant's answers were "targeted towards the officer." In response, the prosecutor submitted that *defendant* opened the door when he responded to questioning by defense counsel with the statement that he "respect[s] all police of-

---

4. "In Rhode Island, the terms 'motion to pass the case' and 'motion for a mistrial' are synonymous." *State v. Grant*, 946 A.2d 818, 824

n. 2 (R.I.2008) (quoting *State v. O'Connor*, 936 A.2d 216, 218 n. 2 (R.I.2007)).

ficers;" the prosecutor emphasized his recollection that defendant used the word "all." [5]

In denying defendant's motion to pass the case, the trial justice observed that defendant's statement was that "he respected authority." She then noted that "[t]his line of questioning * * * goes to his credibility," which in her view was a "different issue than the motion in limine." The trial justice then specifically addressed the contention that allowing this line of questioning would contravene her earlier pretrial ruling. She stated in pertinent part:

> "I indicated to you that if [defendant] took the stand there were going to potentially be issues. This is one of them. He can't say I respect authority and not allow the State to inquire into his disrespect for authority. He directly meets that evidence. Those were his words."

The cross-examination of defendant then continued, with defendant acknowledging that he had in fact stated in his complaint: "I think that all Providence police officers need help because they have been acting brutal to the community in Providence." However, defendant stated that neither in his meetings with Inspector Colon nor in a voice mail message did he ever threaten to assault a Providence police officer. It was defendant's further testimony that his comment to Officer Reposa in May of 2003 that "he was going to pay for what he did," was a reference to his plan "to use legal action." The defendant denied saying to Officer Reposa: "[Y]ou're f——ing done," but he acknowledged saying: "[W]ait and see what I do when I get out of here." The defendant also acknowledged that he had said that he would "do legal action" against both the hospital and the police department. He testified that, at one point, he was informed that he would receive "restitution" for his cell phone but that he never did receive same.

The prosecutor proceeded to question defendant regarding the cell phone incident at Rhode Island Hospital and regarding a number of phone calls that he allegedly made to Inspector Colon. The defendant's response to most of these questions was either that he did not understand the question asked or that he could not recall what had transpired. However, he did recall that, at the time of the incident at Rhode Island Hospital, Officer Reposa had asked him to "shut the phone."

### 5. The Rebuttal Testimony of Inspector Francisco Colon

Inspector Colon provided testimony in rebuttal regarding defendant's denial that he ever threatened to assault a Providence police officer or that he made certain phone calls to Inspector Colon. It was the inspector's testimony that, during his September 1, 2003 meeting with defendant, defendant made a threat against members of the Providence Police Department. According to Inspector Colon, defendant

---

**5.** We would note that the record indicates that defendant was actually responding to questions posed by the prosecutor, not defense counsel. The prosecutor's question at the beginning of the objected-to line of questioning was: "Sir, you testified to this jury under oath that you respect all authority and you respect all Providence police officers; didn't you say that?"

Although Mr. Rosario had not initially testified that he respected *all* authority and *all* Providence police officers, he had responded as follows to the prosecutor's question as to whether he liked Officer Reposa: "Yes, I like him. He is an officer. I respect authority." While the prosecutor's recollection about defendant's use of the word "all" was inaccurate, the clear implication of defendant's testimony was that he liked and respected authority figures in general.

"stated several times that he was going to have to assault a police officer and he would need to do that to gain respect." The inspector further testified that he tried to counsel defendant against taking that course of action; the inspector stated that defendant responded that getting arrested was "how he would gain respect."

Inspector Colon also testified regarding a phone message that he received from defendant on September 19, 2003. The inspector stated that, during that message, defendant again "indicated that he was going to assault a police officer."

The prosecutor then proceeded to play excerpts from a number of voice mail messages from May of 2004 to June of 2006, which messages the inspector had recorded and in which the inspector recognized the voice as being that of defendant. The messages contain a number of expletives, mention Officer Reposa by his badge number, and refer to defendant's desire to receive compensation for his broken phone. The following is a sample of what the jury heard:

> "This is the day that the police officer mother f——er broke my phone one year ago. * * * Sir, what's up, Colon, I call for my paycheck about my cell phone that mother f——er son of a b—— broke. Call me back, damn mother. * * * Want to know where the check for the mother f——er. * * * Hey, Colon, today's Friday want to know where the check for the mother f——er broke the cell phone that police, Providence Police broke one year ago."

### 6. The Verdict

On December 12, 2007, the jury found Mr. Rosario guilty of assault with a dangerous weapon. He then filed a motion for a new trial; that motion was heard and denied on January 15, 2008. On February 8, 2008, defendant was sentenced to five years suspended, with five years of probation. Thereafter, defendant filed a timely notice of appeal.

### C

### Issues Raised on Appeal

On appeal, defendant contends that the trial justice erred in two respects. First, in defendant's view, the trial justice erred in ruling that the use of the word "altercation" in the prosecution's opening argument did not violate her pretrial ruling. He contends that, "given the inflammatory nature of that comment in the context of this case," the trial justice abused her discretion in denying the first motion to pass the case.

Second, defendant argues that "the state was improperly permitted to manufacture an issue solely for the [purpose] of impeachment with otherwise inadmissible evidence;" he contends that the trial justice committed reversible error by (1) overruling defendant's objections to these inquiries and (2) by denying his second motion to pass the case.

### II

### Standard of Review

A trial justice's ruling on a motion to pass the case "is entitled to great weight." *State v. Grant*, 946 A.2d 818, 826–27 (R.I.2008); *see also State v. Mendoza*, 889 A.2d 153, 158 (R.I.2005); *State v. Disla*, 874 A.2d 190, 198 (R.I.2005). On appeal, a trial justice's ruling on a motion to pass the case "will be disturbed * * * only if he or she was clearly wrong." *Grant*, 946 A.2d at 827; *Disla*, 874 A.2d at 198. We accord such deference to the ruling of the trial justice in this context because he or she "possesses a front-row seat at the trial and is therefore in an ideal position to make such decisions." *Grant*,

946 A.2d at 827 (internal quotation marks omitted); *see also State v. McManus*, 941 A.2d 222, 234 (R.I.2008).

■ With respect to evidentiary rulings, it is well established that "questions as to the admissibility *vel non* of evidence are confided to the sound discretion of the trial justice." *State v. Moreno*, 996 A.2d 673, 678 (R.I.2010) (internal quotation marks omitted); *see also State v. Merida*, 960 A.2d 228, 234 (R.I.2008). Accordingly, we "will not interfere with a trial justice's decision in that regard unless there was a clear abuse of discretion * * *." *Merida*, 960 A.2d at 234; *see also Moreno*, 996 A.2d at 678; *State v. Pitts*, 990 A.2d 185, 189 (R.I.2010). Furthermore, in conducting our review, "this Court is disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *." *Moreno*, 996 A.2d at 678 (internal quotation marks omitted); *see also Pitts*, 990 A.2d at 189–90.

### III

### Analysis

### A

### The Defendant's First Motion to Pass the Case

■ This Court has often discussed the principles relevant to motions to pass the case that are "occasioned by the intentional or accidental injection into a jury trial of extraneous matters of an allegedly harmful nature." *State v. Hoyle*, 122 R.I. 45, 47, 404 A.2d 69, 70 (1979); *see also State v. Marrapese*, 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). In that regard, we have stated that "the trial justice must assess the prejudicial impact" of the allegedly harmful statements. *State v. LaPlante*, 962 A.2d 63, 70 (R.I.2009) (internal quotation marks omitted); *see also State v. Pacheco*, 763 A.2d 971, 979 (R.I.2001); *State v. Toole*,

640 A.2d 965, 974 (R.I.1994). Prejudice may derive from an attorney's statement when the statement "is extraneous to the issues before the jury and tend[s] to inflame the passions of the jury." *State v. Monteiro*, 924 A.2d 784, 792 (R.I.2007).

■ Accordingly, in assessing the prejudicial impact of contested evidence, the trial justice should consider whether the evidence was "of such a nature as to cause the jurors to become so inflamed that their attention was distracted from the issues submitted to them" or "prevent their calm and dispassionate examination of the evidence." *LaPlante*, 962 A.2d at 70, 71 (internal quotation marks and citation omitted); *Pacheco*, 763 A.2d at 979. As we have observed, however, "there is no fixed formula for determining prejudice." *LaPlante*, 962 A.2d at 70; *see also Monteiro*, 924 A.2d at 792. Rather, potentially prejudicial evidence must be "viewed in the context in which it appeared and in light of the attendant circumstances." *LaPlante*, 962 A.2d at 70–71 (internal quotation marks omitted).

■ The defendant contends that the trial justice clearly erred when she denied defendant's first motion to pass the case— a motion predicated on the prosecutor's use of the word "altercation" in his opening statement. According to defendant, the use of that word was a violation of the trial justice's pretrial ruling and was inflammatory in nature. We disagree.

We perceive no error in the trial justice's determination that the use of the word "altercation" did not contravene the portion of her pretrial ruling that related to the May 2003 incident at the hospital. In our view, defendant's argument that the use of the word "altercation" was violative of the pretrial ruling assigns too much pejorative connotation to that particular word. As the trial justice explained in

rendering her ruling on the motion to pass the case, the real objective of her pretrial ruling was to avoid "getting into the details of what transpired" and to avoid "any reference to alcohol or intoxication * * *." While the word "altercation" may be slightly less bland than the word "interaction," it is not a word that assigns blame, delves into the details of what occurred, or suggests intoxication. Accordingly, the trial justice did not clearly err in ruling that the use of the word "altercation" did not violate her pretrial ruling.

It follows that there was no error in the trial justice's ultimate decision not to pass the case. While the word "altercation" may suggest a more emotionally charged exchange than "interaction," we fail to see how the substitution of this word alone would inflame the passions of the jurors and prevent them from examining the evidence in a calm and dispassionate manner. Moreover, as the trial justice correctly observed, the word must be assessed in light of the surrounding words and sentences of which it was a part. In denying defendant's motion to pass the case, the trial justice noted the need for "context for the broken phone." The word "altercation" was uttered as part of the prosecution's description of the cell phone incident, and (significantly) it was unaccompanied by any suggestion as to who instigated or may have been to blame for the altercation.

■■■ We would also note that, in the course of her pretrial instructions, the trial justice explicitly instructed the jury regarding the non-evidentiary nature of opening statements. (*See* footnote 3, *supra.*) And this Court must assume "that a jury has followed a trial justice's instructions as they were given." *LaPlante,* 962 A.2d at 71–72 (internal quotation marks omitted).

Because we conclude that the trial justice did not err in denying defendant's first motion to pass the case, we perceive no basis for a reversal on that ground. *See Grant,* 946 A.2d at 829.

## B

### The Defendant's Objection and Second Motion to Pass the Case

■■■ The defendant's other contentions on appeal relate to the trial justice's denial of his second motion to pass the case. That motion was made when defendant was questioned by the prosecutor on cross-examination about generalized threats against the Providence police—which questioning defendant contends was in contravention of the trial justice's pretrial rulings. The defendant argues that the prosecution was "improperly permitted to manufacture an issue" so that it could then impeach defendant with otherwise inadmissible evidence. In support of his argument, defendant cites this Court's holdings in *State v. O'Dell,* 576 A.2d 425 (R.I.1990), and *State v. McDowell,* 620 A.2d 94 (R.I.1993).

In *O'Dell,* 576 A.2d at 429, the defendant in a sexual assault trial was cross-examined as to conversations that he had with the alleged victim's daughter. After the defendant denied having had any conversations with the daughter, the prosecution called her to testify in rebuttal. *Id.* The prosecution had not disclosed any intention to call the daughter as a witness, nor had it disclosed the existence of any of the defendant's statements to her—as is required by Rule 16 of the Superior Court Rules of Criminal Procedure. *O'Dell,* 576 A.2d at 429. On appeal, this Court recognized that the statements made to the victim's daughter "could not have been admissible as part of the state's case in chief as a result of the nondisclosure of such statements in response to discovery * * *." *Id.* In vacating the defendant's

conviction and ordering a new trial, the Court stated in pertinent part:

"We recognize that evidence that may not be admissible in the prosecution's case in chief may be used in rebuttal in order to counter false statements made by the accused *in the course of his direct* testimony. * * * [T]he prosecution may not manufacture an issue *in the course of cross-examination* for the purpose of impeaching the credibility of defendant by the use of evidence or testimony that would otherwise be inadmissible." *Id.* (emphasis added) (internal citation omitted).

In *McDowell*, 620 A.2d at 95, also a sexual assault case, the trial justice had ruled that the testimony of one particular person would not be admissible at trial pursuant to Rule 404(b). That person was never mentioned during the direct examination of the defendant. *McDowell*, 620 A.2d at 95. However, on cross-examination, the prosecution questioned the defendant about whether he had sexually assaulted or directed sexually inappropriate comments toward that very person. *Id.* at 95–96. When the defendant denied having engaged in such conduct, the prosecution was permitted to call that person as a rebuttal witness. *Id.* at 96. Citing *O'Dell,* this Court held that the admission of such rebuttal testimony constituted clear error and necessitated a reversal. *McDowell,* 620 A.2d at 96.

After carefully reviewing defendant's testimony during direct examination and the controverted questions posed during his cross-examination, we cannot agree that the instant case falls within the reach of our holdings in *O'Dell* and *McDowell* or that the trial justice abused her discretion in overruling defendant's objection. On the contrary, our review of the record convinces us that there were *ample* grounds to support the trial justice's decision. While defendant correctly asserts that the topic of generalized threats against Providence police officers was not raised or denied by defendant on direct examination, other facts radically distinguish the instant case from what happened in the *O'Dell* and *McDowell* cases.

On cross-examination, the prosecution merely asked whether or not defendant liked Officer Reposa—a question that strikes us as being rather innocuous and not inappropriate. Moreover, it was a question to which counsel for defendant opted not to object. In response, after asserting that he liked the officer, defendant chose to do more than answer the question that had been asked; he uttered the following broad declarative sentence: "I respect authority." [6] In seeking to have defendant confirm his statement regarding his respect for authority, the prosecution next asked whether defendant had testified that he respected *all* authority and *all* Providence police officers. Again, counsel for defendant opted not to object, and defendant responded to the question in the affirmative. The prosecution then confronted defendant with a statement in his June 2003 complaint concerning the cell phone incident to the effect that "all Providence police officers need help because they have been acting brutal to the community in Providence[.]" It was only then that defendant raised an objection to the line of questioning.

We consider the argument that the prosecution was permitted to manufacture an issue for the purposes of impeachment with otherwise inadmissible evidence to have been waived due to the fact that defendant did not interpose an objection in

---

**6.** It will be recalled that defendant's complete answer to the question as to whether he liked Officer Reposa was: "Yes, I like him. He is an officer. I respect authority."

a timely manner. *See State v. Forand,* 958 A.2d 134, 141 (R.I.2008). However, even if that contention were not waived, the instant case is readily distinguished from the *O'Dell* and *McDowell* cases: the prosecutor in the case at bar did not ask defendant about anything that was barred by the pretrial ruling. What actually transpired was that defendant chose to answer a question about his attitude towards one person (Officer Reposa) with an extremely broad and unqualified declaration about his respect for authority in general. With defendant having opened the door in that manner, the trial justice did not err in allowing Inspector Colon to testify in rebuttal. (Indeed, in her pretrial ruling the trial justice had foreseen that just such an eventuality might occur in the course of the trial.)

Since we hold that the trial justice's decision to admit the challenged evidence was not an abuse of discretion, it follows that her decision to deny the defendant's motion to pass the case, which motion was predicated on the admission of the above-referenced evidence, was not erroneous.

### IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.